J-A10021-23

2023 PA Super 111

| LICELY JUAREZ VELASQUEZ | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| LIZARDO MARROQUIN MIRANDA | : | |
| | : | |
| Appellee | : | No. 2688 EDA 2022 |

Appeal from the Order Entered September 20, 2022
In the Court of Common Pleas of Delaware County
Civil Division at No(s): CV-2021-002235

BEFORE: PANELLA, P.J., KING, J., and STEVENS, P.J.E.[*]

OPINION BY KING, J.: **FILED JUNE 20, 2023**

Appellant, Licely Juarez Velasquez ("Mother"), appeals from the order entered in the Delaware County Court of Common Pleas, which declined to find her minor children, S.M.J. (born in 2007) and E.M.J. (born in 2010) ("Children") eligible for Special Immigrant Juvenile Status ("SIJS").[1] We affirm.

The relevant facts and procedural history of this case are as follows. Mother and Appellee, Lizardo Marroquin Miranda ("Father"), are the biological parents of Children. On March 5, 2021, Mother filed a custody complaint seeking sole legal and physical custody of Children. Mother also attached to

---

[*] Former Justice specially assigned to the Superior Court.

[1] "The SIJ[S] statute, 8 U.S.C.S. § 1101(a)(2)(J), provides that a juvenile who qualifies [for SIJS] may apply for lawful permanent residency and thus relief from deportation." **Orozco v. Tecu**, 284 A.3d 474, 476 (Pa.Super. 2022).

her custody complaint a proposed order asking the court to award Children SIJS. The court scheduled a hearing for June 22, 2022. At the June 22, 2022 hearing, the court raised questions concerning its jurisdiction because neither of the parties are citizens of the United States nor are Children citizens of the United States.[2] Mother subsequently briefed the jurisdictional issue and argued that under Section 5402 of the Uniform Child Custody Jurisdiction and Enforcement Act, the court had exclusive jurisdiction over the custody matter because Pennsylvania is the home state of Children.[3] On July 7, 2022, the court entered an order asserting that it lacked jurisdiction over the custody matter. The next day, Mother filed a petition for reconsideration and an evidentiary hearing. The court granted relief and scheduled a custody trial for August 15, 2022.

The court held a custody trial on August 15, 2022, at which Mother

---

[2] The parties and Children are citizens of Guatemala. Mother moved to Pennsylvania with Children in December 2018. Father still resides in Guatemala.

[3] **See** 23 Pa.C.S.A. § 5421(a) (explaining that court of this Commonwealth has jurisdiction to make initial custody determination only if Commonwealth is home state of child on date of commencement of proceeding); 23 Pa.C.S.A. § 5402 (defining "home state" as state in which child lived with parent for at least six consecutive months immediately before commencement of child custody proceeding). Mother further asserted that she and Children were not unlawfully present in the United States because they have pending asylum claims. **See** 8 U.S.C. § 1182(a)(9)(B)(iii)(II) (stating no period of time in which alien has bona fide application for asylum pending shall be taken into account in determining period of unlawful presence in United States).

testified.[4]  On September 20, 2022, the court granted Mother sole legal and physical custody of Children, but the court declined to find Children eligible for SIJS.  On October 11, 2022, Mother filed a petition for reconsideration.  While the petition remained pending, Mother filed a timely notice of appeal on October 19, 2022.  On October 27, 2022, the court denied the petition for reconsideration.  On November 14, 2022, this Court directed Mother to file a concise statement of errors complained of on appeal no later than November 28, 2022.  Mother filed her statement on November 21, 2022.

Mother raises three issues on appeal:

> Whether…Mother properly preserved the issues raised in her Rule 1925(b) Statement?
>
> Whether the trial court erred in denying [M]other's request to find that reunification of the minor children with their father is not viable due to abandonment, abuse or neglect, or a similar basis under state law because the trial court construed both federal and state remedial statutes narrowly and ignored or misapplied state definitions of abandonment, abuse and neglect to reach its conclusions?
>
> Whether the trial court's refusal to conclude that it is not in the best interest of the minor children to return to Guatemala is unreasonable, and therefore an abuse of discretion, given [M]other's credible testimony and the trial court's findings of fact in support of its custody determination?

(Mother's Brief at 6).

---

[4] Although Father accepted service of the custody complaint and received notice of the hearing, he declined to participate in the hearing or in any proceedings involving this matter.  Father also has declined to file an appellee's brief on appeal.

In her first issue, Mother acknowledges that she failed to file her concise statement of errors complained of on appeal contemporaneously with her notice of appeal. Mother argues, however, that once this Court directed her to file a concise statement, she complied with the timeframe set by this Court's order. Thus, Mother asserts that she cured any defect concerning her failure to file the statement.

Additionally, Mother asserts that her concise statement clearly and concisely identified the issues she sought to raise on appeal. Mother contends that her concise statement discussed the trial court's narrow construction of relevant federal and state statutes, and the court's misapplication of, or failure to consider, the definitions of "abandonment," "abuse," and "neglect," relevant to a determination of SIJS. Mother claims these were the precise challenges she planned to assert on appeal. Mother maintains her concise statement further addressed the court's failure to conclude that reunification of Children with Father and a return to Guatemala would be against Children's best interests. Mother avers that she also raised in her statement that the court's failure to find Children eligible for SIJS contradicts its custody award in favor of Mother. Mother insists this was another issue she intended to, and does, raise on appeal. Mother concludes that she submitted her concise statement in a timely fashion after receipt of this Court's directive, and properly preserved her issues such that we may review her issues on appeal. We agree.

Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i) provides that in a children's fast track appeal, "[t]he concise statement of errors complained of on appeal shall be filed and served with the notice of appeal." Pa.R.A.P. 1925(a)(2)(i). Nevertheless, this Court has held that "in all children's fast track cases, the failure to file a concise statement of errors complained on appeal with the notice of appeal will result in a defective notice of appeal, to be disposed of on a case by case basis." **In re K.T.E.L.**, 983 A.2d 745, 747 (Pa.Super. 2009). In deciding whether to quash or dismiss an appeal for noncompliance with Rule 1925(a)(2)(i), the **K.T.E.L.** Court directed us to the guidelines set forth in **Stout v. Universal Underwriters Ins. Co.**, 491 Pa. 601, 421 A.2d 1047 (1980). **See id.** In **Stout**, our Supreme Court stated:

> The extreme action of dismissal should be imposed by an appellate court sparingly, and clearly would be inappropriate when there has been substantial compliance with the rules and when the moving party has suffered no prejudice.
>
> \* \* \*
>
> The Rules of Appellate Procedure were adopted to insure the orderly and efficient administration of justice at the appellate level. They were not intended, however, to be so rigidly applied as to result in manifest injustice, particularly when there has been substantial compliance and no prejudice.

**Stout, supra** at 604-05, 421 A.2d at 1049.

Additionally, we observe that:

> A concise statement of errors complained of on appeal must be specific enough for the trial court to identify and address the issues the appellant wishes to raise on appeal. Pennsylvania Rule of Appellate Procedure 1925 provides

- 5 -

that a Rule 1925(b) statement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge. Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.

This Court has considered the question of what constitutes a sufficient Pa.R.A.P. 1925(b) statement on numerous occasions and has established that an appellant's concise statement must properly specify the error to be addressed on appeal.

**S.S. V. T.J.**, 212 A.3d 1026, 1030-31 (Pa.Super. 2019) (internal citations, quotation marks, and brackets omitted).

"In essence, the purpose of requiring a concise statement of [errors] complained of on appeal under Pa.R.A.P. 1925(b) is to allow the trial court to easily discern the issues an appellant intends to pursue on appeal and to allow the court to file an intelligent response to those issues in an opinion pursuant to Pa.R.A.P. 1925(a)." **Id.** at 1032. **See also Kanter v. Epstein**, 866 A.2d 394, 401 (Pa.Super. 2004), *cert. denied*, 546 U.S. 1092, 126 S.Ct. 1048, 163 L.Ed.2d 858 (2006) (stating: "By raising an outrageous number of issues, the Defendants have deliberately circumvented the meaning and purpose of Rule 1925(b) and have thereby effectively precluded appellate review of the issues they now seek to raise"). "[A] [c]oncise [s]tatement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent to no [c]oncise [s]tatement at all." **Id.** at 400.

Instantly, Mother did not file a concise statement of errors complained of on appeal contemporaneously with her notice of appeal, even though this

case is designated as a children's fast track case. ***See*** Pa.R.A.P. 1925(a)(2)(i). Consequently, this Court entered an order on November 14, 2022, directing Mother to file a concise statement of errors complained of on appeal no later than November 28, 2022. Mother filed her statement on November 21, 2022. Under these circumstances, we see no reason to dismiss Mother's appeal for her technical noncompliance with Rule 1925(a)(2)(i). Mother ultimately complied with this Court's directive, and her belated filing did not prejudice Father (who has had no involvement in this case) or impede the trial court's ability to draft an opinion. ***See K.T.E.L., supra***. ***See also Stout, supra***.

Turning to whether Mother's Rule 1925 statement properly preserved her appellate issues, the trial court described Mother's statement as "overly verbose, generalized, and vague necessitating the court to guess and search for the issues being raised and attempt to guess at [Mother's] intended issues to be framed for appeal." (Trial Court Opinion, filed 12/29/22, at 13). The trial court deemed all of Mother's issues waived on appeal on this basis, relying on ***S.K. v. C.K.***, No. 1311 EDA 2022 (Pa.Super. filed Nov. 22, 2022) (unpublished memorandum)[5] (holding father's eight-page "concise" statement raising 41 issues failed to comply with requirements of Rule 1925(b)(4), constituting waiver of issues on appeal).

While we acknowledge that Mother's Rule 1925 filing is anything but

---

[5] ***See*** Pa.R.A.P. 126(b) (stating we may rely on unpublished decisions of this Court filed after May 1, 2019 for persuasive authority).

concise and does not appear in the typical formatting of a concise statement of errors, we cannot agree with the trial court that Mother failed to preserve her claims for appeal. Specifically, upon our review of Mother's Rule 1925 statement, we cannot say that the statement is vague or that it was insufficient to permit the trial court to identify the issues Mother sought to raise on appeal. *See Kanter, supra*. If anything, Mother's statement is overly specific and more detailed than necessary to preserve her claims. Mother not only specified the issues she sought to raise on appeal, but she cited the record and legal authority to support her claims. We further note that Mother did not purport to raise an "outrageous" number of issues on appeal. *Compare id.*; *S.K., supra*. Rather, Mother essentially raised one issue: whether the trial court's decision regarding Children's eligibility for SIJS was erroneous as against the facts of record, applicable law, and at odds with the court's custody decision in favor of Mother. Consequently, we decline to deem Mother's appellate issues waived and will proceed to a merits review of her claims.

In her second and third issues combined, Mother argues that the court's denial of SIJS eligibility for Children is diametrically opposed to the trial court's custody decision in Mother's favor. Specifically, Mother contends that the court needed to decide whether reunification with Father was viable due to Father's abandonment, abuse, or neglect. If the court found that reunification was not viable, Mother maintains the court was required to find Children

eligible for SIJS. Mother complains that the court readily found evidence of Father's abandonment, abuse and/or neglect such that the court awarded Mother sole physical and legal custody of Children. Nevertheless, Mother emphasizes that the court failed to make the same findings relevant to SIJS eligibility for Children. Mother insists that SIJS eligibility does not require the initiation of formal proceedings against Father to support a finding of abandonment, abuse, or neglect.

Further, Mother argues it is in Children's best interests not to return to Guatemala. Mother stresses that there are less educational opportunities for Children in Guatemala. Mother asserts that neither Father nor Children's step-siblings would have any relationship with Children if Children were forced to return to Guatemala. Mother contends that Children previously witnessed Father's physical abuse against Mother. Mother concludes that the trial court abused its discretion concerning its findings regarding Children's best interests, and this Court must grant Mother relief. We disagree, albeit on different grounds than the trial court.

When interpreting a federal statute, we apply the following principles:

> The construction of a federal statute is a matter of federal law. Under federal rules of statutory construction, in determining the meaning of a federal statute, the courts look not only to particular statutory language, but also to the design of the statute as a whole and to its purposes. Furthermore, when the courts confront circumstances not plainly covered by the terms of a statute, suggesting that Congress did not contemplate the issue, they endeavor to give statutory language the meaning that advances the policies underlying the legislation.

*Zaleppa v. Seiwell*, 9 A.3d 632, 636 (Pa.Super. 2010) (quoting *Council 13,*

*American Federation of State, County and Mun. Employees, AFL-CIO*

*ex-rel. Fillman v. Rendell*, 604 Pa. 352, 379-80, 986 A.2d 63, 80 (2009))

(internal citations omitted).

SIJS is an immigration status that may be awarded to:

**(J)** an immigrant who is present in the United States—

**(i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;**

**(ii)** for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and

**(iii)** in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status, except that—

**(I)** no juvenile court has jurisdiction to determine the custody status or placement of an alien in the custody of the Secretary of Health and Human Services unless the Secretary of Health and Human Services specifically consents to such jurisdiction; and

**(II)** no natural parent or prior adoptive parent of any alien provided special immigrant status under this subparagraph shall thereafter, by virtue to such parentage, be accorded any right, privilege, or status under this

chapter[.]

8 U.S.C.A. § 1101(a)(27)(J) (emphasis added).

Additionally, the Code of Federal Regulations provides:

**§ 204.11  Special immigrant juvenile classification.**

\*　　\*　　\*

(b) Eligibility.  A petitioner is eligible for classification as a special immigrant juvenile under section 203(b)(4) of the Act as described at section 101(a)(27)(J) of the Act, if they meet all of the following requirements:

(1) Is under 21 years of age at the time of filing the petition;

(2) Is unmarried at the time of filing and adjudication;

(3) Is physically present in the United States;

(4) **Is the subject of a juvenile court order(s) that meets the requirements under paragraph (c) of this section**; and

(5) Obtains consent from the Secretary of Homeland Security to classification as a special immigrant juvenile. For [United States Citizenship and Immigration Services ("USCIS")] to consent, the request for SIJ classification must be bona fide, which requires the petitioner to establish that a primary reason the required juvenile court determinations were sought was to obtain relief from parental abuse, neglect, abandonment, or a similar basis under State law.  USCIS may withhold consent if evidence materially conflicts with the eligibility requirements in paragraph (b) of this section such that the record reflects that the request for SIJ classification was not bona fide. USCIS approval of the petition constitutes the granting of consent.

(c) Juvenile court order(s).

(1) **Court-ordered dependency or custody and**

**parental reunification determination. The juvenile court must have made certain judicial determinations related to the petitioner's custody or dependency and determined that the petitioner cannot reunify with their parent(s) due to abuse, neglect, abandonment, or a similar basis under State law.**

**(i) The juvenile court must have made at least one of the following judicial determinations related to the petitioner's custodial placement or dependency in accordance with State law governing such determinations:**

**(A) Declared the petitioner dependent upon the juvenile court; or**

**(B) Legally committed to or placed the petitioner under the custody of an agency or department of a State, or an individual or entity appointed by a State or juvenile court.**

(ii) The juvenile court must have made a judicial determination that parental reunification with one or both parents is not viable due to abuse, abandonment, neglect, or a similar basis under State law. The court is not required to terminate parental rights to determine that parental reunification is not viable.

(2) Best interest determination.

(i) A determination must be made in judicial or administrative proceedings by a court or agency recognized by the juvenile court and authorized by law to make such decisions that it would not be in the petitioner's best interest to be returned to the petitioner's or their parent's country of nationality or last habitual residence.

(ii) Nothing in this part should be construed as altering the standards for best interest determinations that juvenile court judges routinely apply under relevant State law.

(3) Qualifying juvenile court order(s).

(i) The juvenile court must have exercised its authority over the petitioner as a juvenile and made the requisite judicial determinations in this paragraph under applicable State law to establish eligibility.

(ii) The juvenile court order(s) must be in effect on the date the petitioner files the petition and continue through the time of adjudication of the petition, except when the juvenile court's jurisdiction over the petitioner terminated solely because:

(A) The petitioner was adopted, placed in a permanent guardianship, or another child welfare permanency goal was reached, other than reunification with a parent or parents with whom the court previously found that reunification was not viable; or

(B) The petitioner was the subject of a qualifying juvenile court order that was terminated based on age, provided the petitioner was under 21 years of age at the time of filing the petition.

8 C.F.R. § 204.11(b), (c) (emphasis added).

To summarize, SIJS is a federal immigration status available to foreign children in the United States who have been abused, abandoned, or neglected. **See** 8 U.S.C.A. § 1101(a)(27)(J). To obtain SIJS, a child must first apply to a state court for an order finding that he or she meets the statutory and regulatory requirements. **See id.** (SIJS statutory requirements). **See also** 8 C.F.R. § 204.11 (SIJS regulatory requirements). **See also Osorio-Martinez v. Attorney General United States of America**, 893 F.3d 153, 163 (3d. Cir. 2018) (stating: "Alien children may receive SIJ[S] only after satisfying a set of rigorous, congressionally defined eligibility criteria, including that a juvenile court find it would not be in the child's best interest to return to her

country of last habitual residence and that the child is dependent on the court

or placed in the custody of the state or someone appointed by the state").

The Third Circuit Court of Appeals set forth the eligibility criteria for SIJS

in *Osorio-Martinez* as follows:

> We begin with the requirements for SIJ[S] that show a congressional intent to assist a limited group of abused children to remain safely in the country with a means to apply for [legal permanent resident] status, and that, in effect, establish a successful applicant as a ward of the United States with the approval of both state and federal authorities[.]
>
> This understanding of SIJ[S] is reflected in the very definition of a Special Immigrant Juvenile, *i.e.*, a child "who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law."  8 U.S.C. § 1101(a)(27)(J)(i).  It is also compelled not only by the statute's purpose and history, … but also by [the Department of Homeland Security's] own characterization of SIJ[S] as a classification to provide humanitarian protection for abused, neglected, or abandoned child immigrants eligible for long-term foster care[.]  And the SIJ[S] statute's implementing regulations indicate that, to remain eligible for adjustment of status pending visa availability, SIJ[S] designees must remain in the custody of the state court or state agency to which they have been committed.  *See* 8 C.F.R. § 204.11(c)(5) (noting that to be eligible for SIJ[S], an alien must "**continue** to be dependent upon the juvenile court and eligible for long-term foster care" (emphasis added)); *see also* Special Immigrant Juvenile Petitions, 76 Fed. Reg. 54978-01, 54980 (proposed Sept. 6, 2011) (to be codified at 8 C.F.R pts. 204-05, 245) (noting that "dependency," for purposes of SIJ status, "encompasses dependency, commitment, or custody").

Importantly, that close, dependency relationship with the United States is also borne out by the statutory criteria for SIJ[S] eligibility. To qualify for SIJ[S], applicants not only must be physically present in the United States, unmarried, and under the age of twenty-one, but also, … they must obtain an order of dependency from a state juvenile court. 8 U.S.C. § 1101(a)(27)(J)(i); 8 C.F.R. § 204.11(c). That order requires the state court to find: (1) that the applicant is "dependent on a juvenile court ... or placed under the custody" of a state agency or someone appointed by the state; (2) that "it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or ... habitual residence,"; and (3) that "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law." 8 U.S.C. § 1101(a)(27)(J)(i), (ii); *see also* 8 C.F.R. § 204.11(a), (c). Moreover, these determinations must be "in accordance with state law governing such declarations of dependency," 8 C.F.R. § 204.11(c)(3), which, depending on the state, may also entail specific residency requirements, *e.g.*, [Pa.R.C.P.] 1915.2(a)(ii) (providing that the dependency action must be brought in the child's home county or a county "which had been the child's home county within six months before commencement of the proceeding"). …

With that order in hand, applicants must then file an application with USCIS, along with "sufficient evidence to establish ... eligibility" and the associated filing fee. The Secretary of Homeland Security must also consent to the grant of SIJ[S], which functions as an acknowledgement that the request for SIJ classification is bona fide—that is, that the benefit is sought primarily ... for the purpose of obtaining relief from abuse or neglect or abandonment.

All of these requirements attest to SIJ[S] designees' dependency and close ties with state and federal authorities, the risk to their well-being in being removed to their countries of origin, and a relationship to the United States that far exceeds that of aliens on the threshold of initial entry or apprehended within hours of surreptitiously entering the United States.

- 15 -

*Id.* at 168-70 (some internal citations and quotation marks omitted).

In *Orozco, supra*, on which Mother relies, this Court considered an interlocutory appeal from a collateral order denying the mother's petition seeking the issuance of an order containing specific factual findings regarding her minor child necessary to obtain SIJS. In that case, the mother had filed a petition for sole custody along with a petition seeking specific findings regarding SIJS for the child. The trial court stated that it intended to consider only the mother's custody issue raised in her complaint, but not the issue of SIJS. On appeal, this Court held:

> We conclude that the trial court abused its discretion. Mother specifically requested SIJ[S] findings both orally during the March 2019 hearing and in her October 2019 petition. The federal statutory scheme puts the factual determinations necessary for SIJ[S] solely within the purview of state courts. Yet the court flatly refused to issue the SIJ[S] order. In this posture, the refusal was an abuse of discretion. Accordingly, we vacate the trial court's order and remand for the trial court to enter a new order that shall include factual findings with respect to [the child]…

*Orozco, supra* at 479.

Instantly, we initially note that Mother's reliance on *Orozco* does not afford her any relief. While the trial court in that case refused to make any factual findings concerning eligibility for SIJS despite the mother's requests to do so, here, the trial court made factual findings concerning whether Children were eligible for SIJS and simply did not find facts necessary to demonstrate that Children were eligible for SIJS. Specifically, the trial court found: (1) the record does not demonstrate that Father abused Children; (2) based on the

evidence presented, the court was without sufficient information to decide whether Mother informed Father of her intent to relocate with Children to the United States or whether Father consented to relocation, such that the court was unable to determine that Father abandoned Children; and (3) the record did not definitively support a conclusion that it would be in Children's best interests to remain in the United States. (*See* Trial Court Opinion, filed 12/1/22, at unnumbered pp. 10-12). On appeal, Mother challenges these findings as against the facts of record, applicable law, and inconsistent with the court's decision to award Mother sole legal and physical custody of Children.

Nevertheless, we need not decide whether the trial court's factual findings set forth above were erroneous, because Children are not eligible for SIJS on other grounds. The relevant federal law contemplates an award of SIJS **only** where the child or children have been adjudicated dependent or the child or children have been legally committed to the custody of a state agency or an individual or entity appointed by the state or juvenile court. **See** 8 U.S.C.A. § 1101(a)(27)(J)(i); 8 C.F.R. § 204.11(b)(4), (c)(1)(i)(A-B). **See also Osorio-Martinez, supra**.

Significantly, Children have not been adjudicated dependent or placed in the legal custody of a state agency or an individual or entity appointed by a state or juvenile court. Rather, the record makes clear that Children reside with Mother and Mother's two sisters, and the two children of one of Mother's

sisters. (**See** N.T. Trial, 8/15/22, at 7-8; R.R. at 116-17). Thus, Mother focuses on only part of the relevant statutory and regulatory federal language at issue (concerning whether reunification with one or both parents is viable and whether it would be in the children's best interest to remain in the United States), but she ignores the eligibility requirement that Children must be adjudicated dependent or under the custody of a state agency or individual or entity appointed by the state or juvenile court.[6] On this record, Children are simply ineligible at this juncture for SIJS. **See** 8 U.S.C.A. § 1101(a)(27)(J)(i); 8 C.F.R. § 204.11(b)(4), (c)(1)(i)(A-B); **Osorio-Martinez, supra**. **See also Zaleppa, supra**. Accordingly, we affirm the order declining to find Children eligible for SIJS, albeit on other grounds. **See Liberty Mut. Ins. Co. v. Domtar Paper Co.**, 77 A.3d 1282 (Pa.Super. 2013), *aff'd*, 631 Pa. 463, 113 A.3d 1230 (2015) (explaining that this Court may affirm trial court's decision on any grounds supported by record on appeal).

Order affirmed.

---

[6] In response to a question concerning this point raised at oral argument, Mother responded that she satisfied the relevant statutory language because the court awarded her sole custody of Children. Nevertheless, the express statutory language and the purpose of the statute do not support Mother's claims. **See Zaleppa, supra**. Notably, the statute contemplates a scenario where the court **appoints** an individual or entity to have custody over the child at issue. This scenario is consistent with the purpose behind the statute to assist a limited group of abused children who are essentially "ward[s] of the United States." **See Osorio-Martinez, supra**. Here, the court did not appoint Mother to have custody. Rather, Mother is the biological parent of Children and she sought to exercise sole custody of Children over the rights of Father. Mother's interpretation of the statutory language is unavailing.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/20/2023