J-S35001-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JAMES E. JOHNSON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MELISSA L. HARRIS | : | No. 676 MDA 2023 |

Appeal from the Order Entered April 6, 2023
In the Court of Common Pleas of Cumberland County
Civil Division at No(s):  2021-00888

BEFORE:   PANELLA, P.J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.:                    **NOVEMBER 13, 2023**

James E. Johnson ("Father") appeals from the custody order entered April 6, 2023, regarding his nine-year-old child ("Child") with Melissa L. Harris ("Mother").[1] Father contends the trial court abused its discretion in addressing issues with Mother's paramour, Aubrey Phair, and in imposing the costs of Child's counseling solely on Father. Finding no abuse of discretion, we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Although this appeal involves a custody action, we will use the parties' names in the caption "as they appeared on the record of the trial court at the time the appeal was taken." Pa.R.A.P. 904(b)(1). Notably, "upon application of a party and for cause shown, an appellate court may exercise its discretion to use the initials of the parties in the caption based upon the sensitive nature of the facts included in the case record and the best interest of the child." Pa.R.A.P. 904(b)(2); **see also** Pa.R.A.P. 907(a). Neither party has applied to this Court for the use of initials in the caption. We will, however, refer to the minor involved in this custody dispute as "Child" to protect her identity.

As noted by the trial court, this custody dispute, while only two years old, is contentious and heavily litigated: "Father has filed six petitions for contempt, two petitions for special relief, [and] one emergency petition[;] Mother has filed two petitions for special relief, one petition for contempt, and a motion for counsel fees."[2] Opinion and Order of Court, 4/6/23, at 1.

The primary dispute in this appeal concerns Mother's paramour, Phair, who "has a history of substance related arrests and some have led to convictions." *Id.* at 22. Broadly, Father contends that this history means that Phair poses a risk to Child's safety. In contrast, Mother argues that Phair's history is entirely unconnected to his interactions with Child, and that Phair's efforts at rehabilitation have successfully reformed him such that he poses no risk to Child's safety.

The parties agreed to a custody evaluation by psychologist Arnold Shienvold, Ph.D., and that Dr. Shienvold would address Father's issues concerning Phair. After several hearings, the trial court entered an order permitting Phair to have contact with Child pursuant to several conditions:

    a. [Phair] shall continue to participate in drug and alcohol treatment through Gaudenzia until he is successfully discharged from the program.
    b. [Phair] shall continue to receive mental health treatment through the VA at a minimum, until it is recommended that he [] no longer needs that treatment.

---

[2] Several of the parties' contempt petitions, as well as Mother's motion for counsel fees, were addressed in a separate order on the same date and are the subject of a separate appeal to this Court, docketed at 677 MDA 2023.

c. [Phair] shall not drive [Child] once his license is reinstated unless he has successfully completed drug and alcohol counseling through Gaudenzia and has not had any positive drug screen results during his treatment period with Gaudenzia.

d. [Phair] shall not consume alcohol prior to July 9, 2023[,] and may socially consume alcohol after July 9, 2023[,] if said consumption would not be contrary to any specific recommendation of his mental health counselor or drug and alcohol counselor. Any alcohol consumption should not take place during Mother's custodial period and [Phair] should abstain from consuming alcohol from the day before Mother's 5 day period of custody begins.[3]

e. [Phair] should be subject to no more than two random drug screens per month with one of these screens being completed by Gaudenzia until July 9, 2023, unless Gaudenzia recommends a longer duration of drug screening. The other random drug screen will be performed at the request of the [Guardian Ad Litem or "GAL"], who will notify both counsel, at which time [Phair] will have twelve (12) hours to comply with the request. Payment for the testing is the responsibility of Father and he will only be reimbursed if [Phair] tests positive for an illicit substance for which he has no prescription. Results of the drug screens shall be shared with counsel and the GAL.

f. In the event [Phair] has a positive drug screen result, is discharged unsuccessfully from Gaudenzia, his mental health treatment, or receives a criminal charge involving alleged substance abuse/use, his contact with [Child] shall immediately be subject to supervised contact with a supervisor other than Mother.

*Id.* at 7-9 (footnote added). The Order also provided that "[t]here is absolutely no requirement that either parent shall offer the non-custodial parent the right

---

[3] The shared physical custody arrangement provides that Mother has custody of Child starting every Monday after school until she delivers Child to school Wednesday morning. Then Father has custody starting every Wednesday after school until he delivers Child to school on Friday morning. The parents alternate having custody on the weekends. The trial court and the parties refer to this as a 2/2/5/5 schedule. *See* Opinion and Order of Court, 4/6/23, at 7.

of first refusal if the custodial parent is unable to care for [Child] during their custodial period." *Id.* at 9. Father then filed this timely appeal.

As an initial matter, we note that our Rules of Appellate Procedure require that an appellant file a concise statement of errors complained of on appeal contemporaneously with the notice of appeal in a children's fast track appeal. *See* Pa.R.A.P. 1925(a)(2)(i). Here, Father filed his notice of appeal on May 5, 2023, 29 days after the order was entered, and was docketed in this Court on May 11, 2023. No concise statement was attached to the notice of appeal. Father subsequently filed a concise statement dated May 9, 2023, and docketed in this Court on May 12, 2023. Further, while the certificate of service attached to Father's concise statement indicates service to Mother and the GAL, it does not indicate service to the trial court. And the trial court, in its filed opinion, indicated that it was not aware of any concise statement.

As such, Father's appeal is technically subject to dismissal. *See Velasquez v. Miranda*, 297 A.3d 837, 841 (Pa. Super. 2023). However, this Court will not dismiss an appeal entirely where there has been substantial compliance with the rules and the opposing party has suffered no consequence. *See id.* Here, we note that Father has not substantially complied with the rules, as he failed to serve the trial court with his concise statement. Despite this, the trial court's opinion and order that is the basis of this appeal provides sufficient detail to address Father's first, second, and third issues on appeal.

On the other hand, Father's fourth issue on appeal, where he argues that "the trial court abuse[d] its discretion in holding [Father's] attempts to protect [Child] by hiring a private investigator and notifying the police and CYS when he had concerns for the safety of [Child][] against [Father,]" Appellant's Brief, at 2, does not identify where the trial court held Father's actions against him. Our review of the trial court's order reveals a single paragraph that may form the basis of Father's complaint: "[Father] has engaged in a course of conduct to include filing meritless contempt petitions, contacting the police and CYS multiple times with baseless claims and hiring a private investigator to follow Mother's boyfriend for a period of six months, in an attempt to limit Mother's custody." Opinion and Order of Court, 4/6/23, at 20. This paragraph is listed as the "Discussion" of the trial court's analysis of a statutorily mandated custody factor which required the trial court to determine which "party is more likely to encourage [and] permit frequent [and] continuing contact between [Child] [and] another party." ***Id.***

We conclude that we are unable to discern the entirety of the trial court's reasoning on this subject from this short paragraph. Under these circumstances, we conclude that Father's failure to substantially comply with Pa.R.A.P. 1925(a)(2)(i) has impeded our ability to review his fourth issue. As such, we find Father has waived his fourth issue on appeal.

Father's first and second issues concern the trial court's conclusions regarding Phair:

> A. Did the trial court abuse its discretion by improperly permitting [Child] to be unsupervised around [Phair], including transporting [Child] and eliminating the right of first refusal, and finding that no credible evidence was presented with regard to [Phair] posing a risk of harm to [Child]?
>
> B. Did the trial court abuse its discretion by improperly allocating the costs of [Phair's] drug testing to [Father] and in not including alcohol on the panel of substances to be tested?

Appellant's Brief, at 2 (emphasis and quotation marks omitted). An extended discussion of the evidence concerning Phair is necessary to understand Father's issues.

Dr. Shienvold testified that "given the concerns about drug use by [] Phair, there was a little stronger focus [in his custody evaluation] on that with a specific attempt to answer a question as to what risk he presented to [Child] if he was in the household." N.T., Custody Trial, 2/13/23, at 4. Dr. Shienvold conveyed that Phair had been diagnosed with PTSD after Phair finished serving in the Coast Guard as a rescue swimmer. *See id.* at 5-6. He noted that Phair had received and successfully completed in-patient treatment for his PTSD through the Department of Veterans Affairs. *See id.*

Dr. Shienvold stated that he received records from Gaudenzia indicating that, at the time of the hearing, Phair was receiving outpatient therapy and drug testing. *See id.* at 8. Gaudenzia sent him the results of a drug test from approximately one month before the hearing which did not return any positive results. *See id.*

Regarding his own evaluations of Phair, Dr. Shienvold stated that he observed a visit between Phair and Child. *See id.* at 15. He described the visit as "very positive." *Id.* "[Child] was very excited to spend some time with [Phair]. … [Child] did not want him to leave at the end, did not want to be separated from him at the end." *Id.* "[Phair] interacted with [Child] in a very positive, non-intrusive – he didn't push himself on her. He allowed her to initiate contact with him." *Id.*

Dr. Shienvold opined that Child's relationship with Phair was a positive influence and "definitely in her best interests" to continue to see Phair. *Id.* at 16. Cutting off contact between Child and Phair would be a "punishment" to Child: "[Phair's] relationship with [Child] is really an important one. She has an attachment to him." *Id.* at 31.

Dr. Shienvold further opined that Phair posed a "low probability" of direct risk of harm to Child, which was the lowest category possible.[4] *Id.* at 19. However, Dr. Shienvold conceded that Phair posed a "low to moderate probability of indirect risk" to Child. *Id.* He explained "[Phair] doesn't present as someone who will abuse – directly abuse [Child] or anyone[.]" *Id.* However, "if [Phair] were to have [Child] in the car driving with him and he was under the influence of an unknown substance, that could be a risk of harm to

---

[4] Dr. Shienvold testified that "[n]o one can ever say for certain that someone has zero risk of being with a child or, quite honestly, being with anybody[.]" N.T., Custody Trial, 2/13/23, at 18.

- 7 -

[Child.]" *Id.* Additionally, if he were using or abusing certain substances, he may not be entirely aware of any danger Child might be in. *See id.* Dr. Shienvold identified these as "indirect" risks, and explained Phair could pose a moderate probability of indirect risk, as he was still in treatment. *Id.*

However, he did not include alcohol as a substance of concern for Phair. *See id.* at 19-20. Dr. Shienvold believed that the instances of Phair abusing alcohol were distant in time. *See id.* at 21. He further explained that there are different therapeutic approaches to dealing with alcohol use: "So along the lines of AA and that approach, there's a strict abstinence philosophy associated with that because of the possibility and propensity of usage triggering more usage. There's a whole other school of thought which goes by creating socially appropriate use of alcohol and restraint." *Id.*

Pursuant to all his conclusions, Dr. Shienvold recommended that Phair be randomly drug tested no more than two times a month. *See id.* He opined that any more testing would be "intrusive," and "overkill." *Id.* When asked whether the testing should screen for alcohol, Dr. Shienvold as ambivalent. *See id.* at 22. However, he clarified that he recommended that Phair not consume alcohol around Child until at least June 2023. *See id.* at 22-23.

Dr. Shienvold also clarified his position on whether Father should be the person responsible for requesting the random drug tests. While his report recommended that Father be given this power, by the time of the hearing Dr. Shienvold had changed his position on the issue: "one of the themes in this

situation is … [Father's] controlling behavior in a more general sense. And in thinking about this I've given him a mechanism, a tool, to control that is somewhat subjective and arbitrary." ***Id.*** at 23. Accordingly, Dr. Shienvold testified that it was "a better option … to have a neutral third party" initiate the request for random drug testing. ***Id.*** at 28.

Finally, Dr. Shienvold opined regarding the right of first refusal contained in the custody schedule. He recommended the right be limited to situations where the custodial parent "is going to go away overnight." ***Id.*** at 31. He believed that the existing right of first refusal enhanced the conflict between the parties. ***See id.*** at 31-32.

Dr. Shienvold agreed that Father had a basis for being concerned about Phair, given Phair's history. ***See id.*** at 40-41. And on cross-examination, Dr. Shienvold admitted that there were aspects of Phair's criminal history that he was not aware of when he wrote his report. ***See id.*** at 34-36 (drug test results indicating possibly sub-clinical levels of fentanyl); 38 (Phair charged on December 1, 2020, with public intoxication); 39 (Phair charged on May 2, 2018, with driving under the influence of alcohol); 40 (charges in 2007 and 2010 of possession of marijuana and third-degree felony child abuse, respectively). Phair testified that he had never ingested fentanyl, and that he understood that if he had tested positive for fentanyl, the Department of Veterans' Affairs would have terminated his treatment. ***See id.*** at 62-64.

Also, the trial court heard from a private investigator from a firm hired by Father. Father hired the firm "to determine whether Mr. Phair was present [at Mother's home] while [Child] was present[.]" N.T., Custody Trial, 3/20/23, at 21. As such, the firm performed live surveillance and video surveillance of Mother's residence. *See id.* The video surveillance recorded for 24 hours a day for the periods that they were active. *See id.* at 23. Camera recorded both the front of the residence and the back deck. *See id.*

While the investigator did not independently recall all the dates that the cameras were active, he noted that the first surveillance date was in December 2021. *See id.* at 31. Live surveillance of Mother's residence occurred six or seven times from December 2021 to January 2022. *See id.* at 34.

Cameras were active "in the spring of 2022[.]" *Id.* at 32. The last live surveillance of Mother's residence occurred in January 2022. *See id.* at 33. However, the only time surveillance video recorded Phair at Mother's residence was over July 4th weekend in 2022. *See id.*

On that occasion, the video showed Phair entering the residence with plastic bag that had a brown bag inside it. *See id.* at 26. Shortly thereafter, the recording of the back deck showed Phair drinking from a brown bottle. *See id.* at 28. The video also showed Mother interacting with Phair while he was drinking from the bottle. *See id.* at 28-29.

There was no evidence of what was in the bottle. *See id.* at 35. Further, at no point in the recording does Phair appear to be intoxicated. *See id.*

Finally, Child was not present at Mother's residence when this recording was taken. *See id.* However, when questioned about the incident, Phair asserted his right against self-incrimination since he was still on parole. *See* N.T., Custody Trial, 2/13/23, at 92.

Phair testified that he enrolled in outpatient substance abuse treatment in November 2021. *See id.* at 67. During that treatment, he was preliminarily diagnosed with PTSD. *See id.* As a result, he enrolled in inpatient treatment for PTSD and substance abuse on February 15, 2022. *See id.* at 58-59. After 90 days, he was transferred from the hospital to a community setting for continued inpatient treatment. *See id.* at 60.

Phair successfully completed his inpatient treatment program and was discharged from the community home on June 21, 2022. *See id.* at 66. Since then, he has consistently maintained treatment through a VA psychiatrist. *See id.* at 74. He meets with a counselor once a week and attends two group therapy sessions per week. *See id.* at 77.

Phair generally agreed with the conditions proposed by Dr. Shienvold. *See id.* at 80-83. However, Phair expressed concern over open-ended conditions and those that gave power over the situation to Father due to Father's history of controlling behavior. *See id.* at 82.

With this factual record in mind, we turn to Father's first issue on appeal: whether the trial court erred in permitting Phair to be present during Mother's

periods of custody. Under this broad umbrella claim, Father also presents a challenge to the trial court's elimination of the right of first refusal.

Our standard of review of Father's claim is deferential:

We review a trial court's determination in a custody case for an abuse of discretion, and our scope of review is broad. Because we cannot make independent factual determinations, we must accept the findings of the trial court that are supported by the evidence. We defer to the trial judge regarding credibility and the weight of the evidence. The trial judge's deductions or inferences from its factual findings, however, do not bind this Court. We may reject the trial court's conclusions only if they involve an error of law or are unreasonable in light of its factual findings.

*C.A.J. v. D.S.M.*, 136 A.3d 504, 506 (Pa. Super. 2016) (citation omitted).

"With any child custody case, the paramount concern is the best interests of the child." *M.J.M. v. M.L.G.*, 63 A.3d 331, 334 (Pa. Super. 2013) (citation omitted). "This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child." *Id.* (citation omitted).

Father's argument presents a highlight reel of evidence denigrating Phair's character, such as past convictions and the July 4th brown bottle incident. His argument also expends significant energy in attacking the credibility of Dr. Shienvold.

By all accounts, the issue of whether Phair poses an unreasonable risk to the safety and welfare of Child does not have a clear-cut answer. As even Dr. Shienvold conceded, there is no such thing as zero risk, and Father's concerns are not unreasonable. However, as Dr. Shienvold also testified, Child

has an attachment to Phair, and Phair has generally had a positive influence on Child. Under these circumstances, the trial court was required to balance whatever risk Phair posed against the possible harm that would be suffered by Child if Phair were essentially removed from her life.

The trial court explicitly analyzed all the required custody factors and concluded that permitting Child to spend time with Phair during Mother's custodial periods was in Child's best interest, so long as Phair continues to abide by certain conditions. In our view, this arrangement achieves a reasonable balance between Father's fears and Child's emotional needs. Father's fears, while perhaps rational, are insufficient to convince us that the trial court abused its discretion.

We further do not conclude the trial court abused its discretion in eliminating the right of first refusal for custodial periods. The record amply supports the trial court's conclusion that this right primarily acted to create conflict between the parties to the detriment of the parties and, most importantly, Child. Father's first issue on appeal merits no relief.

In his second issue on appeal, Father contends the trial court abused its discretion in forcing Father to pay for Phair's drug testing. Father includes, as a sub-issue, his belief that the trial court abused its discretion in not requiring that alcohol be included in the drug screen.

Father does not identify any standard of review specific to this claim, and we conclude that it falls within the general custody standard of review

cited above. As such, we must determine whether the trial court's treatment of Phair's drug testing was an abuse of discretion with respect to Child's best interests. *See C.A.J.*, 136 A.3d at 506; *M.J.M.*, 63 A.3d at 334.

Once again, we acknowledge that there is no "perfect" answer to the questions presented by Father. As the trial court's order acknowledges, there is reason to fear that Phair may relapse, so testing is in Child's best interests. However, drug testing is not free – someone must pay the costs for it. Since Father did not establish any connection between Phair's prior substance abuse and Child, we cannot conclude that the court abused its discretion in placing this burden on Father so long as there are no positive results. This arrangement internalizes the costs of the testing to the person who is requesting that the testing be performed. Father can, as time goes on, evaluate whether testing is the most cost-efficient means to addressing his fears about Child's safety with Phair, or if other conditions may satisfy his concerns at a lower cost.

With respect to the inclusion of alcohol in the screens, we again conclude that the trial court's decision is not an abuse of discretion. Father failed to establish any connection between Phair's past use of alcohol and any risk to Child. Father also presented no evidence that Phair was currently abusing alcohol. Under these circumstances, it was not unreasonable for the trial court to exclude alcohol from the drug screens.

In his final preserved issue, Father argues that the trial court abused its discretion in requiring him to pay for Child's therapy. *See* Appellant's Brief, at 30-32. Initially we note that Father's argument mischaracterizes the trial court's provision in this regard. Father is only solely responsible for reasonable co-pays not covered by insurance. *See* Opinion and Order of Court, 4/6/23, at 9. If insurance does not cover the therapy, "the parents shall equally share the fees." *Id.*

Beyond that observation, we conclude Father has failed to present sufficient context to establish that the trial court abused its discretion. Father does not point to any evidence of record regarding the costs of the therapy. In fact, Father's argument does not even assert any specific amount or even the existence of co-pays. While we agree with Father that the current record would not support a finding that he alone was responsible for Child's need for therapy, we are unable to conclude that any such finding actually prejudiced Father. Accordingly, we conclude that Father has not established that the trial court abused its discretion in ordering Father to be solely liable for any co-payments necessary for Child's therapy. Father's final preserved issue on appeal is without merit.

Having found that none of Father's issues on appeal merit relief, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/13/2023