**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | |
|---|---|
| LICELY JUAREZ VELASQUEZ, | : No. 108 MAP 2023 |
| | : |
| Appellant | : Appeal from the Order of the Superior |
| | : Court at No. 2688 EDA 2022, entered |
| | : on June 20, 2023, Affirming the Order |
| v. | : of the Delaware County Court of |
| | : Common Pleas, Civil Division, at No. |
| | : CV-2021-002235 dated September 15, |
| LIZARDO MARROQUIN MIRANDA, | : 2022 and entered on September 20, |
| | : 2022 |
| Appellee | : |
| | : SUBMITTED:  March 25, 2024 |

## OPINION

**JUSTICE DOUGHERTY**                                      **DECIDED:  August 29, 2024**

We granted discretionary review to address a matter of first impression for this Court, involving the correct procedure and standards when our courts are asked to make certain requisite findings to support a Special Immigrant Juvenile (SIJ) classification for minors seeking that status before federal immigration authorities.  More specifically, we are asked to clarify the role of Pennsylvania courts in deciding whether these predicate judicial determinations may be made in the context of a child custody proceeding.  We hold that (1) pursuant to federal SIJ law, a child who is the subject of custody proceedings that result in sole custody being awarded to the parent presently in the United States may seek SIJ determinations in that custody proceeding;  (2) the Superior Court erred in holding SIJ determinations may be made only in dependency proceedings; and (3) the record demonstrates Children are entitled to predicate SIJ determinations.  *See Velasquez v. Miranda*, 297 A.3d 837, 847 (Pa. Super. 2023).  We

therefore reverse and remand to the custody court for entry of orders consistent with this opinion.

## I. Background

SIJ is an immigration classification that provides humanitarian protection for certain minors located in the United States. *See* 8 U.S.C. §1101(a)(27)(J) (SIJ definition); 8 C.F.R. §204.11(b) (SIJ eligibility); 6 USCIS Policy Manual (PM) J.2(A) (2024) (available at https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-2). The Immigration and Nationality Act (INA) defines SIJ status (SIJS), in relevant part, as applicable to a child "immigrant who is present in the United States," and:

> (i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;
>
> (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and
>
> (iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status[.]

8 U.S.C. §1101(a)(27)(J).[1] Generally, the SIJ classification allows immigrant children to seek lawful residency in the United States in order to remain where their needs are best met and

---

[1] Congress first enacted the SIJ classification in 1990 and amended the INA provision several times thereafter. Pertinent here, the Trafficking Victims Protection Reauthorization Act (TVPRA) of 2008, Pub. L. No. 110-457, 122 Stat. 5044, amended the provision to its current form. Specifically, TVPRA removed the requirement that SIJ eligibility depends on a state court order "for long-term foster care." TVPRA, Pub. L. No. 110-457, §235(d)(1)(A), 122 Stat. 5044, 5079. The current SIJ classification may attach when "reunification with 1 or both . . . parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law[.]" *Id.* TVPRA also removed language that required a state "dependency order" to grant SIJS. *See id.* at §235(d)(1)(B)(i), 5079 (deleting "the Attorney General expressly consents to the dependency order serving as a precondition to the grant of [SIJS]" and inserting "the Secretary of Homeland Security consents to the grant of [SIJS]"). Notwithstanding these changes in (continued…)

avoid deportation with, or back to, a parent that maltreated them. A child's SIJ classification never confers any immigration benefit to the parents. *See id.* at §1101(a)(27)(J)(iii)(II) ("no natural parent" of a child with SIJS "shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this chapter").

The road to SIJ classification requires stops in both a state and federal decision-making tribunal. United States Citizen and Immigration Services (USCIS), a federal agency of the United States Department of Homeland Security (DHS), promulgates applicable regulations and policy, conducts interviews, screens for fraud and other concerns, adjudicates all SIJ applications, and determines whether to grant SIJ classification to a child. *See* 8 C.F.R. §204.11. The USCIS application process is extensive and requires, *inter alia*, a state court order that includes specific conclusions of law, or predicate "judicial determinations." *See id.*

The state court with "jurisdiction under State law to make judicial determinations about the dependency and/or custody and care of juveniles," described in the federal provisions as a "juvenile court," must issue an order that includes "dependency or custody," "parental reunification," and "best interest" determinations. *Id.* Specifically, the state court must determine whether (1) "reunification with 1 or both of the [child']s parents is not viable due to abuse, neglect, abandonment, or a similar basis found under [s]tate law[,]" and (2) "it would not be in the [child's] best interest to be returned to the [child's] or parent's previous country of nationality or country of last habitual residence[.]" 8 U.S.C. §1101(a)(27)(J)(i)-(ii). It is the resulting state court order containing these predicate judicial determinations that an applicant must present to USCIS when seeking SIJ classification.

---

2008, a corresponding regulation maintained the statutorily defunct "long-term foster care" language until recent amendments in 2022. *See* Special Immigrant Juvenile Petitions, 87 Fed. Reg. 13066, 13080 (Mar. 8, 2022) ("The [SIJ provision] was modified by TVPRA 2008 to reflect [a] shift away from long-term foster care as a permanent option for children in need of protection from parental maltreatment. Accordingly, references to 'foster care' . . . have been removed from the final [SIJ regulation].").

## A. The underlying custody action

Appellant Licely Juarez Velasquez (Mother) filed this action against Lizardo Marroquin Miranda (Father), seeking sole physical and legal custody of their minor daughters, S.M.J. (born July 2007) and E.M.J. (born April 23, 2010) (Children). Children have resided with Mother in Delaware County, Pennsylvania since the three left Guatemala together in late 2018. Mother based her request for sole custody, as well as the SIJ findings, on Father's alleged abuse, abandonment, and neglect of Children. *See* Mother's Complaint for Custody at ¶¶ 3, 18.

Father, who resided in Guatemala at the time, signed and accepted service of the custody complaint and hearing notice, and provided a copy of his Guatemalan identification with a corresponding signature. *See* Trial Court Op., 9/20/22 at 2; *id.* at 2 n.1; N.T. Custody Hearing, 6/22/22 at 4. He did not contest or participate in the custody proceeding, or contact the court to accommodate his participation.[2]

---

[2]   The custody court also "made quite a few attempts to the best of [its] ability to contact [Father]," *see* N.T. Evidentiary & Custody Hearing, 8/15/22 at 4, but was not provided information on how to contact him electronically and was "uncertain as to whether Father lacked the requisite financial means to participate in-person or virtually, or if he had adequate access to appearing remotely." Trial Court Op. at 2 n.1. *But see* N.T. 6/22/22 at 6 (Mother's counsel stated "[Father] indicated to [Mother] . . . that he had no interest in participating in the[ custody] proceedings[.]").

We note at the outset that a parent outside the Commonwealth is entitled to "notice and an opportunity to be heard" in accordance with our law or the foreign state's law, but Pennsylvania does not require the absent parent to participate in the proceedings in order for our courts to have jurisdiction over the custody action. *See* 23 Pa.C.S. §§5425(a) ("Before a child custody determination is made under this chapter, notice and an opportunity to be heard in accordance with the standards of section 5408 [must be given] . . . as in child custody proceedings between residents of this Commonwealth, any parent whose parental rights have not been previously terminated and any person having physical custody of the child."), 5408(a) ("Notice required for the exercise of jurisdiction when a person is outside this Commonwealth may be given in a manner prescribed by the laws of this Commonwealth for service of process or by the law of the state in which the service is made."). *See, e.g.*, *Orozco v. Tecu*, 284 A.3d 474, 476 (Pa. Super. 2022) (mother sought SIJ findings in the context of custody proceedings for sole legal and physical of her minor child and father "[did] not participat[e] in [the] matter").

After determining it had jurisdiction over the custody action,[3] the court proceeded to hold a hearing on August 15, 2022. According to the court, "Mother testified to a history of abuse at the hands of Father" from 2007 to 2018, during the family's time living together in Guatemala.[4] Trial Court Op. at 3. She "testified that the abuse always happened in front of the children, including choking and hitting her." *Id.* Mother also "testified that Father worked, selling construction materials, yet [he] provided minimal support for the care of the children. On average, [weekly], Father would give Mother $5 to assist with the care of the minor children." *Id.* at 4; *see* N.T. 8/15/22 at 10-11. Mother further testified Father did not provide sufficient financial support for Children. *See* N.T. 8/15/22 at 11.

Describing one incident of abuse, Mother stated Father kicked and threw her while pregnant with S.M.J., "causing [Child] to be born with a dislocated hip." *See* Trial Court Op. at 3; N.T. 8/15/22 at 13-15. According to Mother, her doctors explained the "dislocation was due to a fall or [] hit she sustained" while pregnant and she knew Father had caused the injury. *See* Trial Court Op. at 3; N.T. 8/15/22 at 14-15. Mother did not report the incident to police because she "was very afraid." N.T. 8/15/22 at 15.

Mother eventually overcame her fear and took Father to court in Guatemala. *See* Trial Court Op. at 3; N.T. 8/15/22 at 13, 15. She explained: "the charge for taking [Father] to court, [Father] strangled me like this, and he stepped on top of me, and he spat on me." N.T. 8/15/22 at 16. During that incident, Mother testified, Children were present and "shouting no, no, no."

---

[3] The court initially "raised questions concerning its jurisdiction because neither of the parties are citizens of the United States nor are Children citizens of the United States." *Velasquez*, 297 A.3d at 839. Mother argued the court had exclusive jurisdiction over the custody matter because Pennsylvania is the home state of Children. *See* 23 Pa.C.S. §§5402 (defining "[h]ome state" as "state in which a child lived with a parent . . . for at least six consecutive months immediately before the commencement of a child custody proceeding"), 5421(a)(1) ("a court of this Commonwealth has jurisdiction to make an initial child custody determination" when the "Commonwealth is the home state of the child on the date of the commencement of the proceeding"). Although the court first ruled it lacked jurisdiction, it granted Mother's request for reconsideration and ultimately scheduled a custody trial. *See Velasquez*, 297 A.3d at 839-40.

[4] A court interpreter facilitated Mother's testimony. *See* N.T. 8/15/22 at 3.

*Id.* A neighboring relative came to take Children out of the house and Mother heard Children cry and shout "no Papi, no." *Id.* at 16-17. The court "g[ave Father] a restriction of eight [] months whereas he could not harass [Mother], get near her, or insult her." Trial Court Op. at 3. However, Father violated the order "in part because the parties remained living [together]" and he "continued the abuse." *Id.* During this time, Mother reported Father to the police, but she stated they did nothing. *See id.* Mother further claimed "Father's family berated [her] for taking Father to court, telling Mother that she should be ashamed of herself." *Id.*

Mother "testified that in December of 2013, she left Father and stayed at her mother's home . . . [but] Father continued to harass [her] even though she was at her mother's home and no longer residing in the marital home." *Id.* Finally, in June of 2018, when Mother returned home late after work, "Father became so enraged that he took a pot of hot water and threw it in [Mother's] face . . . Father then began fighting and the children, witnessing this, began crying saying to [Father] 'you are going to kill her[].' Mother testified that she took the girls and left." *Id.* at 3-4; N.T., 8/15/22 at 12. Mother sought medical treatment, and the parties separated.

Mother testified that after their separation in June 2018, Father did not provide financial support for Children and visited them only once or twice as a pretext to harass her. *See* N.T. 8/15/22 at 17, 20. Later that year, "Mother left Guatemala to come to the United States because she wanted 'tranquility, . . . a better life,' and 'she feared she would be harmed if she remained in Guatemala[.]'" Trial Court Op. at 6. After they arrived here in December of 2018, "[C]hildren tried to contact Father . . . but [he] did not respond." *Id.* at 4. Ever since, "Mother has attended to the daily physical, emotional, developmental, educational, and special needs of [C]hildren." *Id.* at 9. Children reside with Mother and their maternal aunts and cousins. *See id.*; N.T. 8/15/22 at 7-8. Children's grandparents and uncles remain in Guatemala as well as two half-siblings, Father's children from another relationship. Children do not have a relationship with their half-siblings or Father's side of the family, but Mother testified she would respect Children's decision to see Father if he ever visited them. *See* N.T. 8/15/22 at 23-25.

Mother testified Children are happy in Pennsylvania with her, and they have told her they do not want to return to Guatemala. *See id.* at 21. They are enrolled in school and doing well. *See* Trial Court Op. at 7. S.M.J. excelled academically with honors in all five subjects and had an upcoming interview to enter a charter school for math and science based on her performance; she wants to become a dentist. E.M.J. was also doing well in school and hopes to become a police officer. *See id.* Mother testified Children would not have the same education opportunities in Guatemala and "[t]here the education is very low level." N.T. 8/15/22 at 21.[5] Mother testified she wanted sole custody so she can make medical and educational decisions for Children without Father's involvement.

The court issued an order and opinion on September 20, 2022, granting Mother sole legal and physical custody of Children but denying her request for an order including predicate SIJ findings. The court began by recognizing that, "[i]n a custody case, the court concerns itself with the best interests of the child. . . . [Section] 5328(a) specifies [sixteen] factors which must be considered in determining 'best interests' . . . 'giv[ing] weighted consideration to those factors which affect the safety of the child.'" Trial Court Op. at 4-5, *quoting* 23 Pa.C.S. §5328(a) (2014) (amended 2024).[6] The court elaborated as to the weight it assigned to each factor and in whose favor it weighed.

---

[5] Children did not testify. Mother counsel's stated, "I don't think it's necessary to call [C]hildren unless [the court] want[s] to hear from them." N.T. 8/15/22 at 25. The court responded it did not believe it was necessary to hear from Children. *See id.*

[6] Section 5328(a) provides that "[i]n ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors[.]" 23 Pa.C.S. §5328(a) (2014) (amended 2024). At the time of the proceedings below, those factors included:

> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(continued…)

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

*Id.* Section 5328(a), along with other domestic relations provisions, was amended pursuant to Act of April 15, 2024, P.L. 24, No. 8 (known as "Kayden's Law"), effective August 13, 2024. Kayden's Law expands the factors to be considered in the custody court's best interest analysis and now requires the court to give "substantial weighted consideration" to, *inter alia*, the "safety of the child," which is defined in Kayden's Law as including "the physical, emotional and psychological well-being of the child," and any "[v]iolent or assaultive behavior committed by a party." Act of April 15, 2024, P.L. 24, No. 8, §§2-3 (as amended 23 Pa.C.S. §§5322(a), (continued…)

The court gave "considerable" or "great weight" in favor of Mother to the custody factors (2), (3), (4), (9), and (10), which relate to Children's physical safety and emotional, physical, developmental, and educational needs. *See id.* at 6-7, 9. It detailed Mother's testimony relevant to each factor and relied on her testimony in assigning weight. Specifically, for factor (2) relating to abuse in Children's household and their safety, the court relied on Mother's testimony about Father's abuse. It observed "[m]any of [Father's] acts of abuse occurred in front of [Children] which include[d], choking and hitting Mother[,]" but noted "Father would tell [] Children to leave when the parties were arguing" and Mother "aver[red] that Father never abused or insulted [] Children." Trial Court Op. at 5-6. The court added "[t]here was little to no concern shown towards Mother, and her condition, from [Father's] family members." *Id.* at 6. The court described the present home environment with Mother as "nurturing" and providing adequate supervision and physical safeguards. *Id.* Regarding factor (2.1), relating to the consideration of child abuse and involvement with protective services, the court found in favor of neither party, because "Mother testified that Father never abused [] Children or insulted them," despite Mother having an incentive to testify otherwise. *Id.*

Concerning the parties' performance of parental duties, factor (3), the court stated "[t]hat even when the parties resided with one another, Mother performed the majority of parental duties. . . . Children have been in the United States, with Mother, since 2018 with Mother being the only parent present. Thus, Father has been absent from his parental duties as it pertains to [Children.]" *Id.* at 6-7.

Regarding factor (4), concerning children's need for stability and continuity in education and family and community life, the court acknowledged Children's positive home environment and education situation and that "Mother has been in the United States, since 2018, without any financial or physical support from Father." *Id.* at 7.

---

5328(a)). These changes do not undermine the court's custody determination based on other applicable Section 5328(a) factors.

For factor (9), which asks the court to consider "which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs," the custody court stated "Mother ha[d] established a loving, stable, consistent, and nurturing relationship with [C]hildren adequate for [their] emotional needs. Though [C]hildren resided with both parents, while in Guatemala, it does not appear that Father established a loving and nurturing relationship with [C]hildren." *Id.* at 8-9. It noted much of Father's abuse occurred in front of Children and "caus[ed them] to cry and scream for [F]ather to not harm Mother." *Id.* at 9.

Regarding factor (10), the court found "Mother has attended to the daily physical, emotional, developmental, educational, and special needs of [C]hildren. Father, a resident of Guatemala, has not provided for these needs for at least the last three [years] and it doesn't seem likely that he will be able to perform those duties unless [C]hildren were [to] return to Guatemala." *Id.* The court also gave moderate weight in favor of Mother to factors (12), ability to provide childcare; and (13), parties' conflict and ability to cooperate. *See id.* at 9-10. It gave little weight in favor of Mother with respect to Children's well-reasoned preference. *See id.* at 8. No factor weighed in Father's favor; upon consideration of all the Section 5328 factors, the court granted Mother sole legal and physical custody.[7]

Regarding Mother's request for predicate judicial determinations pursuant to 8 C.F.R. §204.11(c)(1) — *i.e.,* findings related to abuse, neglect, abandonment, "or a similar basis under State law" — the court determined the record did not support such findings. The court rejected Mother's contention she was entitled to the SIJ order based on its award to her of sole legal

---

[7] The court gave little or no weight in favor of either party to factors (1) (encourage and permit frequent and continuing contact between the child and another party); (5), (6) (children's access to extended family and sibling relationships); (8) (parents' attempts to turn the child against each other); (11) (parties' proximity); (14) (drug or alcohol abuse); and (15) (mental and physical condition of household members). Regarding factor (16), the catch-all, the court found "minimal testimony" "which d[id] not otherwise fall into one of the other [] enumerated factors." Trial Court Op. at 10.

and physical custody, and disagreed Pennsylvania's child abuse statutes were implicated. Trial Ct. Op. at 10, *citing* 23 Pa.C.S. §§5329.1, 5402.[8] According to the court, these statutes apply only in cases of "child abuse where protective services are involved, or where a crime has been committed." *Id.* The court noted Mother testified Father neither abused nor insulted

---

[8] Sections 5328(a)(2.1) and 5329.1(a)(1) provide that where there is child abuse as defined under the Child Protective Services Law (CPSL), including crimes involving children that amount to abuse, the court must consider the circumstances surrounding the abuse and the family's status or progress with CPSL. In such circumstances, the court must determine:

> (i) Whether the child is the subject of an indicated or founded report of child abuse [(as defined under Section 6303 of the CPSL)].
>
> (ii) Whether a party or a member of the party's household has been identified as the perpetrator in an indicated or founded report of child abuse.
>
> (iii) The date and circumstances of the child abuse.
>
> (iv) The jurisdiction where the child abuse investigation took place.

23 Pa.C.S. §5329.1(a)(1). And, where protective services under CPSL are implicated, the court must determine:

> (i) Whether a party or a member of a party's household has been provided services.
>
> (ii) The type of services provided.
>
> (iii) The circumstances surrounding the provision of services.
>
> (iv) The status of services.
>
> (v) The date the services were provided.
>
> (vi) The jurisdiction where the services were provided.

*Id.* at §5329.1(a)(2). CPSL's definition of "child abuse" includes intentionally, knowingly or recklessly:

> (3) Causing or substantially contributing to serious mental injury to a child through any act or failure to act or a series of such acts or failures to act.
>
> . . .
>
> (7) Causing serious physical neglect of a child. . . .

*Id.* at §6303(b.1).

Children; there was no evidence of a related crime, or need of protective services, or a report of child abuse; and Father had not been identified as a perpetrator of child abuse.

The court also ruled the record did not support a finding Father abandoned Children, as an "abandoned" child is one who is "[l]eft without provision for reasonable and necessary care or supervision." *Id.* at 11, *quoting* 23 Pa.C.S. §5402. The court emphasized that, despite Mother's testimony about minimal financial support from Father while in Guatemala, he otherwise "appear[ed] to have been home, caring for [C]hildren, until Mother returned [from work]." *Id.* The court reasoned it was unclear "whether another financial arrangement existed between the parties which found Mother being the temporary primary wage earner while Father cared for [C]hildren." *Id.* It also noted it was unclear whether Mother "sought the court's assistance[] in Guatemala[] to order Father to contribute to the care of [] Children," "informed Father of her intent to relocate [C]hildren to the United States," or whether "Father consented to [their] relocation." *Id.* Moreover, the court reasoned, Mother "failed to expound on Father's financial means leaving the [c]ourt to reasonably assume that Father may have limited financial resources to travel to the United States for a visit." *Id.* (footnote omitted). Considering the foregoing, the court found it could not conclude Father abandoned Children.

The custody court did not separately assess whether Father neglected Children or if Children could not be reunified with him due to "a similar basis" as "abuse, neglect, [or] abandonment" under Pennsylvania law. 8 U.S.C. §1101(a)(27)(J)(i).

Concerning Children's "best interests" in the context of the predicate SIJ inquiry, the court believed it was "not tasked with the responsibility to opine as to an individual's desire for citizenship" and that the record could not "definitively support a conclusion that it is in the best interest[s] of [C]hildren to issue a SIJ order." Trial Court Op. at 11-12. It emphasized that "[t]here was no testimony [on] how [C]hildren performed academically in Guatemala," "their prospects of success . . . had they remained in Guatemala or were to return," or "the nature of their relationship with their Father" and Father's family. *Id.* at 12. The court also found it lacked

"unbiased testimony [on] Father's financial status, and as such, [wa]s reluctant to come to the assertion that Father's alleged failure to contact [C]hildren is due to his lack of desire and not some other extenuating circumstances." *Id.* Thus, it determined "[i]n the absence of any credible evidence to the contrary, [it could ]not conclude that it would not be in the best interest of [C]hildren to return to Guatemala." *Id.* Accordingly, the court denied Mother's request for an SIJ order.

Mother sought reconsideration, which the custody court ultimately denied. Mother appealed to Superior Court, and filed a timely statement of matters complained of on appeal.[9] In its corresponding Rule 1925(a) opinion, the custody court incorporated its reasoning from the September 20, 2022 order and opinion.[10] Trial Court 1925(a) Op., 12/21/22 at 14.

Mother argued "the [trial] court readily found evidence of Father's abandonment, abuse and/or neglect such that the court awarded Mother sole physical and legal custody of Children," but erroneously "failed to make the same findings relevant to SIJS." *Velasquez*, 297 A.3d at 843. Mother also insisted "that SIJS eligibility does not require the initiation of formal proceedings against Father to support a finding of abandonment, abuse, or neglect." *Id.* She further emphasized, relying on definitions of "abuse," "child abuse," "abandoned," and "serious physical neglect" under Pennsylvania law, specifically the Child Protective Services Law

---

[9] Mother raised the following relevant issues: "[1)] Whether the trial court erred in denying [M]other's request to find that reunification of the minor children with their father is not viable due to abandonment, abuse or neglect, or a similar basis under state law because the trial court construed both federal and state remedial statutes narrowly and ignored or misapplied state definitions of abandonment, abuse and neglect to reach its conclusions? [2)] Whether the trial court's refusal to conclude that it is not in the best interest of the minor children to return to Guatemala is unreasonable, and therefore an abuse of discretion, given [M]other's credible testimony and the trial court's findings of fact in support of its custody determination?" *Velasquez*, 297 A.3d at 840, *quoting* Mother's Superior Ct. Brief at 6.

[10] The court also suggested Mother's claims on appeal were waived because her Rule 1925(b) statement was not "concise," and at fourteen pages was "overly verbose, generalized, and vague necessitating the court to guess and search for the issues being raised." Trial Court 1925(a) Op., 12/21/22 at 13. The Superior Court disagreed and held Mother preserved her issues for appeal. *See Velasquez,* 297 A.3d at 841-42.

(CPSL), Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA),[11] and Protection from Abuse Act (PAA), the custody court's findings met those definitions, *i.e.*, Father provided minimal financial support when the parties were together and no financial or physical support when they separated, and Father does not appear to have a loving and nurturing relationship with Children. *See* Mother's Superior Ct. Brief at 27-30. Mother further claimed that, given the custody court's findings, it abused its discretion in failing to conclude it is in Children's best interest not to return to Guatemala.[12] *See id.* at 31-33.

### B. Superior Court Opinion

A unanimous three-judge panel affirmed, holding Children were "simply ineligible" for SIJS because they had not been "adjudicated dependent or placed in the legal custody of a state agency or an individual or entity appointed by a state or juvenile court." *Velasquez*, 297 A.3d at 847-48. The panel considered the lower court's decision granting sole legal and physical custody of Children to Mother — rather than to an agency or foster parent — as distinct from, and immaterial to, the predicate SIJ findings that, in the panel's opinion, could arise only in the dependency context. *Id*. at 847 ("The relevant federal law contemplates an award of SIJS only where the child or children have been adjudicated dependent or . . . legally committed to the custody of a state agency or an individual or entity appointed by the state or juvenile court.") (emphasis omitted).

Relying on the Third Circuit's decision in *Osorio-Martinez v. Attorney General*, 893 F.3d 153 (3rd Cir. 2018), the panel opined the "requirements for SIJ . . . show a congressional intent to assist a limited group of abused children to remain safely in the country . . . and that, in

---

[11] 23 Pa.C.S. §§5401-5482.

[12] Mother provided the Superior Court with certificates of service to Father of her Notice of Appeal and other appellate filings, as well as Father's mailing address in Guatemala. The Superior Court notified Father at his address of the briefing and argument schedule. *See* Briefing Schedule Order, 1/5/23 at 3; Argument Letter from Superior Ct. Prothonotary, 3/8/23 at 20. However, Father "declined to file an appellee's brief" or otherwise participate in the Superior Court proceedings. *Velasquez*, 297 A.3d at 840 n.4.

effect, establish a successful applicant as a ward of the United States with the approval of both state and federal authorities[.] . . . To qualify for SIJ[S], applicants not only must be physically present in the United States, unmarried, and under the age of twenty-one, but also, . . . they must obtain an order of dependency from a state juvenile court." *Velasquez*, 297 A.3d at 845–46, *quoting Osorio-Martinez*, 893 F.3d at 168-70 (alterations and omission of some internal citations and quotation marks in original). The panel concluded the federal statute "contemplates a scenario where the court appoints an individual or entity to have custody over the child at issue. This scenario is consistent with the purpose behind the statute to assist a limited group of abused children who are essentially 'ward[s] of the United States.'" *Velasquez*, 297 A.3d at 847 n.6, *quoting Osorio-Martinez*, 893 F.3d at 168 (emphasis omitted). The panel thus viewed SIJS as limited to children in the state's dependency system.[13]

## II. The Present Appeal

Mother filed a petition for allowance of appeal, and we granted review of the following issues:

1. Whether the Superior Court, when it determined the Children are not statutorily eligible for [SIJS] under federal law, misapprehended the role and authority of Pennsylvania courts when such determinations are within the exclusive authority and jurisdiction of [USCIS].

2. Whether the Superior Court erred in concluding the Children are not statutorily eligible for SIJS notwithstanding the fact the trial court awarded sole custody to Mother.

3. Whether the trial court erred in holding Mother failed to meet her burden to prove the predicate findings for SIJS: a) Children's reunification with Father is not viable due to abandonment, abuse, neglect, or a similar basis under Pennsylvania law; and b) it is not in the Children's best interest to return to Guatemala.

---

[13] The panel apparently did not recognize *Osorio-Martinez* referred to the pre-2022 version of 8 C.F.R. §204.11 which still contained the earlier SIJ requirement of long-term foster care eligibility. *See supra* note 1. This outdated foster care requirement likely undergirded the panel's conclusion SIJ status is reserved for "wards" of the state. As we noted above, this language no longer appears in the current provisions.

*Velasquez v. Miranda*, 308 A.3d 293 (Pa. 2023) (*per curiam*). We consider each issue in turn, mindful of our standard and scope of review. When considering pure questions of law, our standard of review is *de novo* and our scope of review is plenary. *See Int. of K.T.*, 296 A.3d 1085, 1104 (Pa. 2023). We generally do not "interfere with the trial court's factual conclusions unless they are unreasonable in view of the trial court's factual findings and thus represent an abuse of discretion." *T.B. v. L.R.M.*, 786 A.2d 913, 916 (Pa. 2001); *see also Int. of K.N.L.*, 284 A.3d 121, 132–33 (Pa. 2022) ("In matters arising under the Adoption Act, as well as appeals of child custody and dependency decisions, our plenary scope of review is of the broadest type; that is, an appellate court is not bound by the trial court's inferences drawn from its findings of fact, and is compelled to perform a comprehensive review of the record for assurance the findings and credibility determinations are competently supported.") (internal quotation marks omitted). Likewise, while we have a broad scope of review, we cannot nullify the fact-finding function of the judge presiding over the custody hearing or their ability to make credibility determinations. *See Lombardo v. Lombardo*, 527 A.2d 525, 529 (Pa. 1987).

## A. Role of Pennsylvania Courts in SIJS

### i. Argument

Mother contends the Superior Court, in affirming the custody court's decision denying the requested SIJ order, "usurped" USCIS's authority and "should have refrained from interpreting the SIJ statute to determine whether [C]hildren are eligible for SIJ relief under federal law." Mother's Brief at 21, 25. She views both lower tribunals as erroneously stepping into the role of USCIS by denying SIJS on a record that supports the predicate findings. She contends the Superior Court's role was limited to determining "whether there was sufficient evidence to support the parental reunification and best interest findings required under the SIJ statute, both of which clearly fall within the scope of 'any relevant factor' a custody court must consider under 23 Pa.C.S. §5328(a)(16)." *Id.* at 25.

Mother supports her position by describing the distinct roles of state courts and USCIS in the SIJ process. She asserts "[w]hile juvenile courts make determinations pursuant to their State law" on the reunification and SIJ best interest questions, it is USCIS that "determines if the child meets the statutory requirements for SIJ classification" under federal law and whether "a primary reason the [child] sought the required juvenile court determinations was to obtain relief from parental abuse, neglect, abandonment, or a similar basis under State law." *Id.* at 20-21, *citing* 8 C.F.R. §204.11(b)(5). Mother explains USCIS generally defers to the state court on matters of state law and "does not go behind the juvenile court order to reweigh evidence and make independent determinations about the best interest of the juvenile and abuse, neglect, abandonment, or a similar basis under state law." *Id., citing* 6 USCIS PM J.2. Mother notes USCIS ultimately determines whether the state court order establishes the child's eligibility for SIJ classification. *See id.* at 21.

Additionally, Mother recognizes the Homeland Security Act of 2002 "gave DHS sole authority to implement and administer the provisions of the [INA]," which "include[s] the SIJ statute and its implementing regulation." *Id.* at 21-22. She emphasizes the familiar federal canon that the "[p]ower to regulate immigration is unquestionably exclusively a federal power[.]" *Id.* at 24, *quoting DeCanas v. Bica,* 424 U.S. 351, 354 (1976); *see also id.* at 22*, quoting Arizona v. United States*, 567 U.S. 387, 394 (2012) ("The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens."). Mother notes DHS itself has stated, with respect to the SIJ regulation, "[w]hether a State court order submitted to [USCIS] establishes a petitioner's eligibility for SIJ classification is a question of Federal law and lies within the sole jurisdiction of [USCIS]." *Id.* at 22, *quoting* 87 Fed. Reg. at 13081 *and Arizona v. United States and Budhathoki v. Nielsen*, 898 F.3d 504, 512 (5th Cir. 2018) ("Whatever responsibilities are exclusively for the [S]tate court, USCIS must evaluate if the actions of the [S]tate court make the applicant eligible for SIJ [classification]").

Mother also recognizes other state courts have "correctly concluded that they lack jurisdiction and authority to determine statutory eligibility for SIJ." *Id.* at 23. She relies on *H.S.P. v. J.K.*, 121 A.3d 849 (N.J. 2015), which "overruled two state trial court decisions finding that a child was not eligible for SIJ status because it was not proven that reunification with both parents was not viable." *Id.* (emphasis omitted). Mother explains *H.S.P.* clarified the limited but important role played by state courts in the SIJ process and that the ultimate determination of SIJ classification "is exclusively the province of the federal government, which has provided copious guidance as to the [SIJ] application process and eligibility." *Id.* at 24-25, *quoting H.S.P.*, 121 A.3d at 860. Mother observes that, in overruling the lower court decisions purporting to deny the ultimate SIJ classification, the New Jersey Supreme Court confirmed the limited role for those courts: to "make[] predicate factual findings." *Id.* at 24, *quoting H.S.P.*, 121 A.3d at 859.[14]

---

[14] *Amicus* National Immigrant Women's Advocacy Project, Inc. (NIWAP) filed a brief supporting Mother. NIWAP "is a nonprofit training, technical assistance, and public policy advocacy organization[ that] promotes the implementation and use of laws and policies that improve legal rights, services, and assistance to immigrant women and children who are victims of child abuse and neglect, child abandonment, domestic violence, sexual assault, stalking, human trafficking, and other crimes." NIWAP Brief at 1. It has worked with Congress to draft amendments to the SIJ statute, and USCIS to implement SIJ protections. *See id.* "As a national resource center, NIWAP also [conducts] technical assistance and training" on seeking SIJS. *Id.*

NIWAP agrees with Mother that "the federal government maintains exclusive jurisdiction over immigration," and the SIJ statute envisions a preliminary role for state courts to make determinations regarding a child's best interest and welfare, "while leaving the ultimate immigration decision to the federal government." *Id.* at 6.

Additional *amici* also filed a brief in support of Mother. They are HIAS Pennsylvania, a not-for-profit immigration legal services and refugee resettlement agency; and Professors Kara R. Finck, Deeya Haldar, and Sarah Katz from the law schools of University of Pennsylvania, Villanova University, and Temple University, respectively (referred to collectively as "HIAS"). *See* HIAS's Brief at 2-3. HIAS agrees with NIWAP that the state court role in these matters is limited and USCIS "makes the ultimate determination of whether the child's application for SIJ status should be granted." *Id.* at 5. HIAS explains "[a] state court's custody order including the special [SIJ] findings . . . merely makes the child eligible for an eventual adjustment of status to lawful permanent resident" and "is not a guarantee." *Id.* at 6 (emphasis omitted).

(continued…)

**ii. Discussion**

We consider whether the Superior Court misapprehended the role and authority of Pennsylvania courts when it affirmed the custody court's denial of the requested SIJ order and conclusively determined Children are not statutorily eligible for SIJS under federal law. First, we acknowledge there is considerable confusion in our common pleas and appellate courts in this area of the law. Notably, in addition to the present case, the Superior Court has filed other published decisions with conflicting reasoning and results. For example, in *Orozco v. Tecu,* 284 A.3d 474 (Pa. Super. 2022), a three-judge panel held the custody court abused its discretion when it "flatly refused to issue the SIJ order" requested by a parent to whom the court had just granted temporary sole physical and legal custody. *Tecu*, 284 A.3d at 479. The panel explained the "federal statutory scheme puts the factual determinations necessary for SIJ status solely within the purview of state courts," and remanded with directions to the custody court to "enter a new order that shall include factual findings . . . that are predicate to USCIS's SIJ determination under federal law." *Id*. *But see Castillo v. Guerra*, 312 A.3d. 341, 344-345 (Pa. Super. 2024) (relying on Superior Court's decision in *Velasquez* to hold nephew, in uncle's care in United States pursuant to custody agreement with mother, did not meet eligibility requirements for SIJS).

And, in *Rivas v. Villegas*, 300 A.3d 1036 (Pa. Super. 2023), where yet another Superior Court panel reached a completely different conclusion from the decision below, then-Judge, now Justice Daniel D. McCaffery astutely observed:

> [T]he law in this area [of SIJS predicate orders] has not been fully developed. While the statute was enacted in 1990, its interpretation and application in this Commonwealth has been limited until very recently. *See Orozco*; *see also Velasquez v. Miranda*, 297 A.3d 837 (Pa. Super. June 20, 2023).

> Moreover, the statute creates a unique procedural caveat where the ultimate determination is of the federal immigration nature, but preliminary factual determinations are made by state courts. *See Orozco*, 284 A.3d at 477 (citation

omitted).  Since the statute's enactment, no settled interpretation or application of the SIJ statute has been developed among the states, and there is no unified body of law for considering what evidence will be sufficient to support SIJ findings.  As such, the courts of this Commonwealth may face confusion and produce inconsistent results in future proceedings as we see this type of case occurring often in the future.  Consequently, we note that further guidance from the Pennsylvania Supreme Court and General Assembly may help to clarify those problems that will continue to challenge our orphans', juvenile, and family courts.

*Rivas,* 300 A.3d at 1049 n.15; *see also* NIWAP Brief at 3-4, *citing id.* (asking this Court to clarify applicable standards because Superior Court's decision shows "the confusion surrounding SIJ laws and regulations and has highlighted the need for guidance from this Court").  We endeavor now to provide clarity and direction.

We begin by reiterating here the relevant provisions of the federal regulation governing the "[s]pecial immigration juvenile classification" created by Section 1101(a)(27)(J) of the INA.  Paragraph (b) of Section 204.11 provides a child is eligible for SIJ status if she meets all of the following requirements:

(1) Is under 21 years of age at the time of filing the petition;

(2) Is unmarried at the time of filing and adjudication;

(3) Is physically present in the United States;

(4) **Is the subject of a juvenile court order(s) that meets the requirements under paragraph (c) of this section**; and

(5) Obtains consent from the Secretary of Homeland Security to classification as a special immigrant juvenile.  For USCIS to consent, the request for SIJ classification must be bona fide, which requires the petitioner to establish that a primary reason the required juvenile court determinations were sought was to obtain relief from parental abuse, neglect, abandonment, or a similar basis under State law.  USCIS may withhold consent if evidence materially conflicts with the eligibility requirements in paragraph (b) of this section such that the record reflects that the request for SIJ classification was not bona fide.  USCIS approval of the petition constitutes the granting of consent.

8 C.F.R. §204.11(b) (emphasis added).  A "juvenile court" is "a court located in the United States that has jurisdiction under State law to make judicial determinations about the dependency and/or custody and care of juveniles."  *Id.* at §204.11(a).

Paragraph (c) of Section 204.11, titled "[j]uvenile court order(s)," describes the requisite contents of state court orders that would support SIJ classification in subsequent USCIS proceedings:

> (1) Court-ordered dependency or custody and parental reunification determination. The juvenile court must have made certain judicial determinations related to the petitioner's custody or dependency and determined that the petitioner cannot reunify with their parent(s) due to abuse, neglect, abandonment, or a similar basis under State law.
>
>> (i) The juvenile court must have made at least one of the following judicial determinations related to the petitioner's custodial placement or dependency in accordance with State law governing such determinations:
>>
>>> (A) Declared the petitioner dependent upon the juvenile court; or
>>>
>>> (B) Legally committed to or placed the petitioner under the custody of an agency or department of a State, or an individual or entity appointed by a State or juvenile court.
>>
>> (ii) The juvenile court must have made a judicial determination that parental reunification with one or both parents is not viable due to abuse, abandonment, neglect, or a similar basis under State law. The court is not required to terminate parental rights to determine that parental reunification is not viable.
>
> (2) Best interest determination.
>
>> (i) A determination must be made in judicial or administrative proceedings by a court or agency recognized by the juvenile court and authorized by law to make such decisions that it would not be in the petitioner's best interest to be returned to the petitioner's or their parent's country of nationality or last habitual residence.
>>
>> (ii) Nothing in this part should be construed as altering the standards for best interest determinations that juvenile court judges routinely apply under relevant State law.

8 C.F.R. §204.11(c). The term "judicial determination" as used in the regulation is defined as "a conclusion of law," but USCIS also requires the SIJ petitioner provide "the factual basis for the requisite [judicial] determinations." *Id.* at §§204.11(a), (d)(5)(i). Pursuant to these federal provisions, then, an immigrant child seeking SIJ status must come to USCIS bearing a state

court order with the requisite judicial determinations — and their factual basis — regarding dependency or custody, reunification, and the child's best interest.

Accordingly, a state court presented with a request such as Mother's for SIJ judicial determinations pertaining to her minor children is expressly authorized by federal law to issue the SIJ order when:

(1) The court has exercised its jurisdiction as authorized by Pennsylvania law to determine the dependency and/or custody and care of a child;

(2) Reunification with one or both of the child's parents is not viable due to abuse, abandonment, neglect, or a similar basis under Pennsylvania law; and

(3) It is not in the child's best interest to be returned to the child's or their parent's country of nationality or last habitual residence.

*See* 8 C.F.R. §204.11(a), (c) & (d)(5)(i); 8 U.S.C. §1101(a)(27)(J); *see also Orozco*, 284 A.3d at 477. It is USCIS that decides whether to grant the child an immigration benefit; the state judicial determinations and their supporting facts do not confer or guarantee an immigration status to the child. *See, e.g.*, *Orozco*, 284 A.3d at 476–77 ("Under the federal SIJ scheme, the state court does not render an immigration decision but rather makes factual determinations predicate to USCIS's SIJ determination."); *H.S.P*, 121 A.3d at 858 ("By making these preliminary factual findings, the juvenile court is not rendering an immigration determination."). But our courts must perform the role the federal scheme ascribes to them, which is what they are uniquely and especially equipped to do: decide questions related to a child's custody, dependency, and best interest, and evaluate allegations of parental mistreatment.

Turning to the decision below, we conclude the Superior Court was only partially correct when it analyzed the role of state courts in the SIJ classification process. The panel correctly recognized that "[t]o obtain SIJS, a child must first apply to a state court for an order finding that he or she meets the statutory and regulatory requirements" for such order. *Velasquez*, 297 A.3d at 845; *see id.* at 844-45, *citing* 8 C.F.R. §204.11(c) (requirements for a "qualifying," predicate SIJ order). Moreover, to the extent the panel attempted to interpret the relevant

federal regulations pertaining to SIJ eligibility, it was within its purview. *See, e.g., Council 13, Am. Fed'n of State, Cnty. & Mun. Emps. v. Rendell*, 986 A.2d 63, 80 (Pa. 2009) (Pennsylvania courts may interpret federal statutes consistent with federal law and principles of statutory construction when confronted with such questions). But the panel's holding that SIJ status may be awarded by USCIS "only" where the children have been adjudicated dependent, and legally committed to the custody of a state agency, rather than to one biological parent in custody proceedings, is problematic and, ultimately, wrong. We proceed to consider the second issue presented in this appeal.

## B. One-Parent Custody & SIJS

### i. Argument

Mother contends the panel below erred in holding as a matter of law that Children are not eligible for SIJ classification because Mother — rather than a state agency — was awarded sole custody. She first avers the panel's decision stands in "stark contrast" to USCIS policy that "[a] qualifying court-appointed custodial placement could be with one parent" and USCIS interprets the 2008 TVPRA amendments to the SIJ statute "as a clarification that [SIJS] petitioners do not need to be eligible for or placed in foster care and that they may be reunified with one parent or other family members." Mother's Brief at 26, *quoting* 6 USCIS PM J.2(C)(1), (C)(2) n.15. Mother explains these amendments "removed the need for a court to deem a child eligible for long-term foster care and replaced it with a requirement that the court find that reunification with one or both parents is not viable due to abuse, neglect, abandonment, or a similar basis under state law." *Id.* at 14, *citing* 6 USCIS PM J.1(B).

Mother contends the current SIJ statute and regulations "do[] not limit the type of court from which a qualifying SIJ order may issue, so long as the court has jurisdiction to make determinations about dependency and/or custody or care of a juvenile." *Id.* at 17, *citing* 8 U.S.C. §1101(a)(27)(J)(i); 8 C.F.R. §204.11(a). She notes "DHS emphasize[d] this point by declining to specify the type of courts that have jurisdiction to make SIJ determinations." *Id.* at

17-18, *citing* 8 C.F.R. §204.11(a) ("Juvenile court means a court located in the United States that has jurisdiction under State law to make judicial determinations about the dependency and/or custody and care of juveniles."); *and* 87 Fed. Reg. at 13077 ("The names and titles of State courts that may act in [that] capacity . . . vary from State to State" and "[a] court by a particular name may have such authority in one State, but not in another."). Mother criticizes the panel's failure to discuss or even cite USCIS's own construction of the SIJ statute. *See id.* at 27-29. Mother insists Section 1011(a)(27)(J) "is clear and unambiguous regarding the type [of] proceeding in which a qualifying SIJ order may be issued, namely dependency proceedings or any proceeding in which a [c]ourt has jurisdiction and authority to issue an order regarding the custody of a juvenile." *Id.* at 28.

Finally, Mother argues the panel drew its erroneously narrow construction of the relevant provisions entirely from the Third Circuit's 2018 decision in *Osorio-Martinez*, which predated the 2022 SIJ regulation change and "quoted outdated implementing regulations referencing pre-2008 statutory language." *Id.* at 27.[15]

### ii. Discussion

When interpreting a federal provision, we recognize the following principles:

> The construction of a federal statute is a matter of federal law. Under federal rules of statutory construction, in determining the meaning of a federal statute, the courts look not only to particular statutory language, but also to the design of the statute as a whole and to its purposes. Furthermore, when the courts confront circumstances not plainly covered by the terms of a statute, suggesting that

---

[15] *Amici* NIWAP and HIAS generally echo Mother's arguments. NIWAP adds that prior to the expansion of SIJ under TVPRA, "non-abusive parents were forced into the excruciating decision of having to surrender their [maltreated] child to long-term foster care in order for their child . . . to qualify for the protections of SIJ status." NIWAP's Brief at 7-8 (internal quotations and citation omitted). It agrees with Mother that the panel's holding below is wrong, *see id.* at 15-16, and federal law makes clear "[a]ny court that has jurisdiction under state law to issue orders regarding the placement, dependency, or custody and care of children can and must make SIJ judicial determinations when requested." *Id.* at 12, *citing* 8 U.S.C. §1101(a)(27)(J); 87 Fed. Reg. at 13079; 8 C.F.R. §204.11(c). NIWAP emphasizes "[t]hese courts include those handling custody, protective orders, divorce proceedings, and many other family-law courts in addition to dependency courts adjudicating foster-care cases." *Id.*

Congress did not contemplate the issue, they endeavor to give statutory language the meaning that advances the policies underlying the legislation.

*Council 13*, 986 A.2d at 80 (citations omitted).[16] And, because the federal law we interpret here involves immigration, we must remain cognizant that the federal government has broad power over immigration, *Arizona*, 567 U.S. at 394, and "exclusive[]" authority to regulate it. *DeCanas,* 424 U.S. at 354. *See also* Concurring and Dissenting Opinion at 10 ("federal primacy [exists] in matters of immigration and citizenship"), *citing* U.S. Const. art. I, §8, cl. 4.

The pertinent federal statute is Section 1101(a)(27)(J)(i) of the INA, which includes in its definition of SIJS that the child must be "declared dependent on a juvenile court located in the United States **or** whom such a court has legally committed to, or **placed under the custody of**, an agency or department of a State, or **an individual** or entity **appointed by a State or juvenile court**[.]" 8 U.S.C. §1101(a)(27)(J)(i) (emphasis added). Considering the provision's disjunctive operator "or," the text clearly indicates a declaration of dependency is only one of several conditions that might trigger SIJ status. The statute also covers children who are placed into the "custody" of individuals "appointed" by the state court.

The operative term "appointed" is not defined in the INA, so we consider its plain meaning, assisted as necessary by relevant dictionary definitions. *See, e.g.*, *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995) (recognizing that "[w]hen terms used in a statute are undefined, we give them their ordinary meaning" and can rely on dictionary definitions to discern such meaning). Black's Law dictionary defines "appoint" as "[t]o fix by decree, order, command, decision, or mutual agreement[.]" *Appoint* (1), BLACK'S LAW DICTIONARY (12th ed. 2024). Merriam-Webster similarly defines the word as "to fix or set officially" or "to name officially." *Appoint* (1) (a)-(b), MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/appoint (last visited August 28, 2024). Given this plain meaning of

---

[16] Although we are bound in such interpretive exercises by applicable decisions of the U.S. Supreme Court, *see Council 13*, 986 A.2d at 77 ("State courts are bound by the decisions of the Supreme Court with respect to the federal Constitution and federal law, and must adhere to extant Supreme Court jurisprudence."), the Court has yet to address the specific statutory question before us.

"appointed," a custody order to one parent is easily the kind of appointment envisioned by the SIJ statute, as the order sets, fixes and defines custody in that individual. Contrary to the Superior Court's opinion, then, the underlying order granting sole legal and physical custody to Mother satisfies the federal statute's requirements. In other words, a child with such an order from a Pennsylvania custody court **may** qualify for SIJS as long as that court also makes the requisite predicate judicial determinations.

Our interpretation of Section 1101(a)(27)(J) is further supported by the corresponding federal regulation. Section 204.11(c) unambiguously authorizes a "juvenile court" — plainly defined as a state court with "jurisdiction under State law to make judicial determinations about the dependency and/**or custody** and care of juveniles" — to issue an order containing the predicate judicial determinations to support SIJ classification. 8 C.F.R. §§204.11(a), (c) (emphasis added). In Pennsylvania, the UCCJEA vests jurisdiction in our common pleas courts to make "child custody determinations" when the Commonwealth is the child's "home state" and in other circumstances. *See, e.g.*, 23 Pa.C.S. §§5421 (initial custody jurisdiction), 5422 (exclusive, continuing jurisdiction). Thus, a common pleas court with custody jurisdiction under the UCCJEA is a "juvenile court" for purposes of making predicate SIJ determinations.[17]

But the panel below nevertheless interpreted the SIJ provisions as exclusively describing a dependency court's order directing an agency or foster parent to take a child into

---

[17] Of course, our common pleas courts handling dependency matters also fit into this category of "juvenile court" as used in the federal provisions. As Justice Wecht correctly observes, in Pennsylvania, the term "juvenile court" typically refers to the juvenile division of the courts of common pleas, and pursuant to our Juvenile Act, that division handles delinquency and dependency matters. *See* Concurring and Dissenting Opinion at 3-4; *see also Commonwealth v. Taylor*, 309 A.3d 754, 791 n.35 (Pa. 2024) (noting the juvenile division handles proceedings in which a child is alleged to be delinquent or dependent, and that such courts are generally referred to as juvenile courts). But, as DHS has acknowledged, regardless of nomenclature, the critical factor in these SIJ cases is the tribunal's jurisdiction under state law. *See* 87 Fed. Reg. at 13077 ("The names and titles of State courts that may act in the capacity of a juvenile court to make the types of determinations required to establish eligibility for SIJ classification may vary State to State.").

protective custody.  *See Velasquez*, 297 A.3d at 847-48.  The panel focused on the phrase "appointed by" in paragraph (c) and erroneously rejected the notion a qualifying order could come from a court considering whether sole legal and physical custody should be awarded to one parent over another, pursuant to 23 Pa.C.S. §5328(a).  *See id*.

Together with our interpretation of Section 1101(a)(27)(J)(i) above, the USCIS policy manual further undermines the panel's cramped reading of the federal statutory and regulatory scheme.  The manual explains that a juvenile court's SIJS-qualifying order may come from a custody court granting sole legal custody to one parent, in addition to a dependency court deciding a child is in need of protective custody.  The manual includes a section titled "custody," separate and apart from a distinct section discussing "dependency" orders.  The manual thus clarifies USCIS's position that "[p]lacing the [child] 'under the custody of' a natural person or entity may encompass legal or physical custody. . . . [and a] qualifying court-appointed custodial placement could be with one parent, if reunification with the other parent is found to be not viable due to that parent's abuse, neglect, abandonment, or similar maltreatment of the [child]." 6 USCIS PM J.2(C)(1).[18]

Contrary to the panel's opinion below, *see Velasquez*, 297 A.3d at 847, *Orozco* is apt here.  The *Orozco* court reversed a lower court's order which denied mother's multiple requests for SIJ findings in her proceeding for sole custody of her child.  *See Orozco*, 284 A.3d at 477, 479.  The panel held that the lower court abused its discretion in "flatly refus[ing] to issue the SIJ order" when "[t]he federal statutory scheme puts the factual determinations necessary for SIJ status solely within the purview of state courts."  *Id.* at 479.  It remanded to the custody

---

[18] To be clear, we have "exercise[d our] independent judgment" in interpreting the federal SIJ statute.  *Loper Bright Enters. v. Raimondo*, __ U.S. __, 144 S.Ct. 2244, 2273 (2024).  We do not suggest the policy manual is "unassailable," Dissenting Opinion at 5, or binds a reviewing court to a certain statutory interpretation of federal law.  Rather, we review it for its informative value and conclude that it further supports our statutory reading.  *See Loper Bright Enters.*, 144 S.Ct. at 2267 ("[A]lthough an agency's interpretation of a statute cannot bind a court, it may be especially informative to the extent it rests on factual premises within [the agency's] expertise.") (citation and quotations omitted, second alteration in original).

court instructing it "to enter a new order that shall include factual findings with respect to [child] that are predicate to USCIS's SIJ determination under federal law." *Id.* Thus, the *Orozco* court recognized a Pennsylvania custody court has jurisdiction to adjudicate requests for SIJ findings, and did not foreclose a one-parent custody order as a pathway to possible SIJ classification. *See also Arrais v. Sousa*, 2518 EDA 2022, 2023 WL 4882721, at *4, 10 (Pa. Super., Aug. 1, 2023) (unpublished memorandum) (holding custody court abused its discretion in "refusing to address [a m]other's petition for special relief" for SIJ findings in her proceedings for sole custody of child, and rejecting custody court's rationale it "[wa]s not sitting as a juvenile court as defined by federal law").

The *Rivas* panel also correctly recognized our custody courts have the requisite authority in these matters, and rejected the idea a custody action "did not qualify as a juvenile or dependency proceeding" for purposes of making predicate SIJ findings. *Rivas*, 300 A.3d at 1041, 1048. Then-Judge McCaffery reasoned:

> [T]he language of 8 C.F.R. §204.11(c) refers to all three terms — juvenile, dependency, and custody. We note the federal statute's language is intended to be all-encompassing, covering the 50 states as well as the District of Columbia. The purpose of the law is to address issues of abuse, abandonment, and neglect. Accordingly, we cannot conclude Section 204.11 would restrict the SIJ classification to only a juvenile court having administrative power. We point out that in this Commonwealth, a court of common pleas is the proper judicial body to review allegations of child abuse, and specifically, an orphans' court has the most fitting jurisprudence.

*Id.* at 1048 (internal citation omitted).

In addition to the Superior Court's decisions in *Orozco* and *Rivas*, other state courts have recognized that one avenue to SIJS is a court-ordered, one-parent custodial arrangement. *See, e.g.*, *Amaya v. Guerrero Rivera*, 444 P.3d 450, 452 (Nev. 2019) (order awarding mother sole physical custody of her daughter "satisfie[d] the dependency or custody prong for SIJ predicate findings" under Nevada statute that mirrors federal SIJ statute and provides its state courts jurisdiction to make SIJ findings); *Kitoko v. Salomao*, 215 A.3d 698, 702 (Vt. 2019) (in mother's uncontested proceeding for sole custody of her children, state court

had authority to make SIJ findings "given the primacy of a child's best interests" and "the court's broad discretion in determining those interests"); *Hernandez-Lemus v. Arias-Diaz*, 100 N.E.3d 321, 323 (Mass. 2018) (state probate and family court was obligated to make SIJ findings in father's proceeding for sole custody of his son); *H.S.P.*, 121 A.3d at 861-62 (mother could seek predicate SIJ findings for her daughters in uncontested custody proceedings); *De Guardado v. Guardado Menjivar*, 901 N.W.2d 243, 248 (Minn. Ct. App. 2017) ("[A] plain reading of the SIJ statute indicates that the award to [a mother] of sole legal and sole physical custody [of her children] is a placement 'under the custody of … an individual appointed' by a state court."), *quoting* 8 U.S.C. §1101(a)(27)(J)(i); *Simbaina v. Bunay*, 109 A.3d 191, 200-01 (Md. Ct. Spec. App. 2015) (mother could seek predicate SIJ findings for her daughter in divorce proceedings in which the court had authority under state law to determine daughter's custody and accepted the parties' custody arrangement awarding mother sole custody); *In re Tommy E.H.*, 22 N.Y.S.3d 213, 214-15 (N.Y. App. Div. 2015) (mother who was awarded sole custody of her child could seek predicate SIJ findings and established them in her custody proceeding). *See also* Concurring and Dissenting Opinion at 4-5, 8-10 (noting the "greater weight of persuasive decisions of other states' courts" shows "a court awarding custody is a 'juvenile court' [under the federal SIJ statute] with the authority to issue a predicate [SIJ] order").[19]

We do not read the Third Circuit's decision in *Osorio-Martinez* as holding children with a one-parent custody order are not entitled to SIJ classification as a matter of law, such that they may not request predicate judicial determinations in custody court. The *Osorio-Martinez* court considered a very different question from the one before us now: whether "the jurisdiction-stripping provision of the INA operate[d] as a[ federally] unconstitutional suspension of the writ

---

[19] NIWAP adds that many other states require their courts to issue SIJ determinations when requested, whether favorable or unfavorable to the child seeking SIJ, so that at least there is a developed record for an appeal of an SIJ order denial. *See* NIWAP's Brief at 16-17, *citing, e.g.*, *Hernandez-Lemus*, 100 N.E.3d at 323 ("A judge simply may not decline to make findings; he or she must make the findings – whether favorable or not – concerning those criteria.").

*of habeas corpus* as applied to SIJ designees seeking judicial review of orders of expedited removal[.]" 893 F.3d at 158. In addressing that issue, the federal court had to determine whether the SIJS recipients in that matter "[had] developed sufficient connections to [the U.S.] [to] invoke [its] Constitution's protections" and the reasoning the panel relied on related to that determination. *Id.* The court's discussion of SIJS occurred in a very different context from the present matter.

But even more to the point, the operative SIJ regulation has been amended in a materially relevant way since *Osorio-Martinez*. *See supra note* 1. The Third Circuit relied on an earlier version of the SIJ regulation which required children be "eligible for long-term foster care" or, essentially, "ward[s] of the United States," before they could seek SIJ classification. *Osorio-Martinez*, 893 F.3d at 168-69, *citing* 8 C.F.R. §204.11 (2009) (amended 2022); *see also id.* at 169, *quoting* 8 C.F.R. §204.11(c)(5) (2009) (amended 2022) (SIJ-eligible child must "continue[ ] to be dependent upon the juvenile court and eligible for long-term foster care") (emphasis omitted). Current law no longer includes the limiting "long-term foster care" language. Instead, SIJS eligibility turns on whether the state court has made judicial determinations, related to the child's custody or dependency, that parental reunification with one or both parents is not viable due to abuse, abandonment, neglect, or a similar basis under state law, and it would not be in the child's best interest to return to her or her parent's country of nationality or last habitual residence*, see* 8 C.F.R. §204.11(c)(1), (2), along with other USCIS eligibility concerns. *See id.* at §204.11(b), (d).

Considering the foregoing federal law and policy, it is clear that proceedings in custody court, which necessarily entail factual findings regarding a child's best interest and the factors set forth at 23 Pa.C.S. §5328(a), may properly support a SIJ-qualifying order for later presentation to USCIS. Both types of state juvenile courts — custody and dependency — are included in Section 204.11(a) as having the authority to make such orders. *See id.* §204.11(a) ("Juvenile court means a court . . . that has jurisdiction under State law to make judicial

determinations about the dependency and/or custody and care of juveniles."). We therefore hold the Superior Court erred in concluding the court awarding sole legal and physical custody to Mother in this case could not also make findings that: 1) reunification with Father is not viable due to abuse, abandonment, neglect, or a similar basis under Pennsylvania law; and 2) it is not in Children's best interest to return to Guatemala. *See Velasquez*, 297 A.3d at 847-48. We now turn to the factual record adduced in this case, and whether the evidence supports an order containing the SIJ predicate judicial determinations.

### C. Pennsylvania Standard for SIJ Predicate Determinations

### i. Argument

Mother contends "the trial court abused its discretion in refusing to make the requested SIJ judicial determinations, given its findings of fact in support of its custody determination." Mother's Brief at 40. She emphasizes that "[i]n most cases of a finding of abuse of discretion, the case is remanded for further consideration, however, where the record is sufficiently developed, [we] may substitute [our] judgment for that of the hearing judge and decide the case on the merits." *Id.* at 7, *citing, inter alia*, *In re Custody of Temos*, 450 A.2d 111, 130 (Pa. Super. 1982) (reversing trial court order and awarding custody to mother based on facts of record). Mother then argues the existing record clearly supports the predicate judicial determination that reunification with Father is not viable due to abandonment and serious physical neglect. *See id.* at 29-40, *citing* 23 Pa.C.S. §§5402 (defining "abandoned" as "[l]eft without provision for reasonable and necessary care or supervision" under the UCCJEA); 6303 (defining "serious physical neglect," a form of "child abuse" under the CPSL as "[a]ny of the following when committed by a perpetrator that endangers a child's life or health, threatens a child's well-being, causes bodily injury or impairs a child's health, development or functioning: (1) A repeated, prolonged or egregious failure to supervise a child in a manner that is appropriate considering the child's developmental age and abilities and (2) the failure to provide a child with adequate essentials of life, including food, shelter or medical care."). Mother lists the following custody-

related findings: 1) Father failed to provide for the daily physical, emotional, developmental, educational, and special needs of Children; 2) "[F]ather has been absent from his parental duties as it pertains to [C]hildren"; 3) "[C]hildren have resided in Pennsylvania with [M]other, two aunts and two female cousins since 2018, and that [M]other has been able to adequately provide for their support, without any financial or physical support from [F]ather"; 4) After the parties separated, Father "attempted to see [C]hildren only twice," and has not "established a loving and nurturing relationship with [C]hildren." *Id.* at 29-32, *citing* Trial Court Op. at 7-9 (internal quotation marks omitted).

Mother also contends the incident in which Father threw boiling water into her face and caused Children to cry and scream for him not to harm her supports a determination reunification is not viable due to abuse. *See id.* at 32, *citing* 23 Pa.C.S. §6102 (abuse between family members includes "attempting to cause . . . bodily injury" and "[p]lacing another in reasonable fear of imminent serious bodily injury"); 23 Pa.C.S. §6303 (child abuse includes "intentionally, knowingly or recklessly . . . [c]ausing or substantially contributing to serious mental injury to a child through any act or failure to act or a series of such acts or failures to act"). *See also* 23 Pa.C.S. §6303 (defining "serious mental injury" as "[a] psychological condition, as diagnosed by a physician or licensed psychologist, including the refusal of appropriate treatment, that: (1) renders a child chronically and severely anxious, agitated, depressed, socially withdrawn, psychotic or in reasonable fear that the child's life or safety is threatened; or (2) seriously interferes with a child's ability to accomplish age-appropriate developmental and social tasks"); 23 Pa.C.S. §5322(a) (incorporating §6102 definition of "abuse" in custody matters, and including "the crime of stalking" as a form of "abuse" but excluding "justified use of force in self-protection or for the protection of other persons . . . by a party in response to abuse or domestic abuse by the other party").[20]

---

[20] Mother also argues the custody court erred by applying 23 Pa.C.S. §5329.1 as the standard for determining whether Children were "abused" under Pennsylvania law. Section 5329.1 (continued…)

Mother also contends "the trial court erroneously framed the [reunification] issue as whether issuance of an SIJ order is in the best interest[] of [C]hildren because it will enable them to seek lawful permanent resident status in the United States," and failed to separately address and make findings regarding state law definitions of abandonment, child abuse, and serious physical neglect. Mother's Brief at 33. She asserts "the [custody] court did not sufficiently consider the best interest[] of the children in this case," when it should be the "paramount concern" as it always is in custody cases. *Id.* at 29.

Concerning the Children's best interest, Mother points to the custody court's findings that Mother is "nurturing, and thus provides adequate physical safeguards and supervision of the Children," and Father "has been absent from his parental duties," as demonstrating it is not in Children's best interest to return to Guatemala. *Id.* at 40, *quoting* Trial Court Op. at 6, 7. Mother also relies on the fact the court believed Children "are very good students and are doing well in school here in Pennsylvania," as demonstrating it is in their best interest to remain here. *Id.* at 41. She focuses on findings related to the Children's preference not to return to Guatemala, their rebuffed attempts to contact Father, and their lack of relationship with half-siblings. *See id.*

Mother also emphasizes findings related to Father's abuse of her in front of Children, contending "they may be exposed to such violence" if reunited with Father. She observes "Pennsylvania law discourages placement of a child in the custody of perpetrators of domestic violence and instead encourages courts to award custody to the non-abusive protective

---

allows the custody court, in making its best interest determination, to consider whether protective services are involved, but Mother argues the federal SIJ provisions do not require initiation of formal proceedings of any kind to support a finding of abandonment, abuse or neglect. *See* Mother's Brief at 34-36. She emphasizes she nevertheless sought a protection order in Guatemala which Father violated repeatedly and Guatemalan officials failed to enforce. *See id.* at 36.

parent." *Id.* at 42, *citing* 23 Pa.C.S. §5329(a) (consideration of criminal convictions, including aggravated assault, in awarding custody).[21]

**ii. Discussion**

The federal provisions pertaining to SIJ classification expressly state the dependency/custody and reunification questions are to be decided in the first instance "under State law." *See* 8 U.S.C. §1101(a)(27)(J)(i) ("a juvenile court located in the United States" makes the custody or dependency determination, and considers whether "reunification with 1 or both of the [child's] parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law"); 8 C.F.R. §§204.11(a), (c) ("a juvenile court" is a court with

---

[21] *Amici* NIWAP and HIAS again generally concur with Mother's arguments. NIWAP additionally asks that we direct Pennsylvania courts to issue SIJ determinations when requested, whether favorable or unfavorable to the child, so that at least there is a developed record for an appeal. *See* NIWAP's Brief at 16-17. It explains many other state courts require this. *Id.* at 16, *citing, e.g.*, *Hernandez-Lemus*, 100 N.E.3d at 323.

HIAS adds that the custody court below misunderstood the SIJ best interest analysis as "opin[ing]" on Children's desire for citizenship and whether the record "**definitively** support[ed] a conclusion that it is in the best interest of the children to issue a[n] SIJ order." *Id.* at 18-19, *quoting* Trial Court Op. at 11-12 (emphasis added). The custody court, HIAS contends, erroneously "conduct[ed] a backwards-facing, hypothetical analysis and impos[ed] a higher burden of proof than required[,]" contrary to fundamental tenets of family law. *Id.* at 20; *see also id.* at 20-25. HIAS criticizes the custody court's focus on what life was like for Children in Guatemala, rather than considering whether Father neglected and abandoned Children as of the date of the hearing, and Children's current, nurturing environment with Mother. *See id.* at 20-23, 27-29, *citing Plowman v. Plowman*, 597 A.2d 701, 707 (Pa. Super. 1991) ("Our review must be based on the best interests of the child at the time of the present hearing.").

*Amici* NIWAP and HIAS agree Children are entitled to predicate SIJ determinations. More specifically, NIWAP contends we "should [] direct the issuance of the SIJ judicial determinations in this case." NIWAP's Brief at 17. HIAS reviews the custody court's factual findings, *see* HIAS's Brief at 18-27, and argues these findings clearly support predicate SIJ determinations for Children. *See id.* at 22-23, 27 ("[T]he question for the [trial] court was whether . . . it was in [C]hildren's best interest not to be removed from their current living situation [with Mother]. Based on the [trial] court's previous factual findings [for its custody determination], the answer should have been an obvious 'yes.' . . . [Also, a]s the trial court itself found, [F]ather was no longer providing any support to [C]hildren, nor was he even attempting to communicate or maintain a relationship with them. Under Pennsylvania law, this failure to meet the minimum requirements for parental activities would constitute neglect and abandonment.").

"jurisdiction under State law to make judicial determinations about the dependency and/or custody and care of juveniles," and must make SIJ determinations "under" or "in accordance with State law"). This statutory scheme clearly assigns state courts the initial evaluation of the predicate SIJ factors. Moreover, the federal provisions do not define abandonment, abuse, or neglect for purposes of determining whether reunification with a parent is viable, leaving it instead to state law for relevant definitions. Indeed, the federal provisions expressly allow courts to consider any "similar basis under State law" to conclude reunification is not viable. *See* 8 U.S.C. §1101(a)(27)(J)(i) (reunification not viable due to abuse, neglect, abandonment or similar basis found under state law); 8 C.F.R. §204.11(c)(1) (judicial determination child cannot reunify with parent due to abuse, neglect, abandonment, or similar basis under state law). *See also In re V.M.T.*, 1337 MDA 2023, 2024 WL 1855125, at *9-10 (Pa. Super., Apr. 29, 2024) (unpublished memorandum) (affirming denial of SIJ order where evidence of non-viability of parental reunification was insufficient).

It is also clear the SIJS best interest question is meant to be decided under state law, at least for purposes of the predicate judicial determinations authorized by Section 1101(a)(27)(J). Section 204.11(c) expressly provides this federal regulatory regime "should [not] be construed as altering the standards for best interest determinations that juvenile court judges routinely apply under relevant State law." 8 C.F.R. §204.11(c)(2)(ii). USCIS policy plainly states:

> While juvenile courts do not have the authority to make decisions on the removal or deportation of a child to another country, it must be determined by the juvenile court . . . that it would not be in the best interest of the [child] to be returned to the country of nationality or last habitual residence of the [child] or the [child]'s parents. This requires the juvenile court to make **an individualized assessment and consider the factors that it normally takes into account when making best interest determinations**, and the record should reflect the factual basis for the juvenile court's determination.
>
> The standards for making best interest determinations may vary between states, and the court may consider a number of factors related to the circumstances of the child and the circumstances and capacity of the child's potential caregiver(s). The child's safety and well-being are typically the paramount concern. For example, if the court places the child with a person in the United States under state law governing the juvenile court dependency or custody proceedings, and

the order includes facts reflecting that the caregiver has provided a loving home, bonded with the child, and is the best person available to provide for the child, this would likely constitute a sufficient factual basis in support of a qualifying best interest determination to warrant DHS consent. The analysis would not change even if the chosen caregiver is a parent. USCIS defers to the juvenile court in making this determination and as such does not require the court to conduct any analysis other than what is required under state law.

6 USCIS PM J.2(C)(3) (emphasis added; footnotes omitted). Considering the foregoing, it is evident state law governs the initial evaluation of the predicate SIJ requirements, and even more to the point, the standards typically employed to determine a child's best interest in the state dependency and custody contexts apply. *See also* HIAS Brief at 9 ("[B]oth the [custody] court and the Superior Court . . . failed to recognize that, ultimately, a request for SIJ predicate findings boils down to the same kind of best interest[] analysis that courts routinely use in custody determinations."). Accordingly, we turn to Pennsylvania custody law and the standards applied in custody court to clarify the process for making predicate SIJ judicial determinations.

The paramount concern in custody cases is the child's best interest. *C.G. v. J.H.*, 193 A.3d 891, 909 (Pa. 2018). The issue is decided on a case-by-case basis considering all relevant factors, and giving weighted consideration to those that affect the child's safety. *See* 23 Pa.C.S. §5328(a) (when "ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving substantial weighted consideration to the factors . . . which affect the safety of the child").

Accordingly, the custody court must consider any evidence of one parent's abandonment, abuse, neglect, and similar maltreatment towards the child when conducting the best interest analysis. *See, e.g.*, 23 Pa.C.S. §§5328(a)(2) (present and past abuse committed by household member); 5328(a)(2.1) (information in 23 Pa.C.S. §5329.1(a) relating to "child abuse and involvement with protective services"); 5328(a)(3) (parental duties performed by each party on behalf of child); 5328(a)(9)-(10) (parent's likeliness to maintain loving, stable, consistent, nurturing relationship adequate for child's emotional needs and provide for child's emotional, physical, development, educational, and special needs); 5328(a)(16) (any other

relevant factor). Pennsylvania custody courts clearly have authority and guidance under our statutes to make the predicate judicial determinations that would support SIJ classification when conducting their usual, statutorily mandated, holistic best interest analysis under Section 5328 to determine parental custody. If analysis of the child's best interest results in a determination that sole legal and physical custody should be with the child's parent or other individual who resides in the United States, then the court can also make the predicate SIJ judicial determination related to the child's best interest – that it is in her best interest not to be returned to her country of nationality or habitual residency. Similarly, if the court awards sole legal and physical custody to the U.S.-resident individual, its findings on this question may support the SIJ predicate judicial determination that reunification with the parent located elsewhere is not viable due to that parent's abuse, abandonment, or neglect of the child, or a similar basis under state law.[22]

Reviewing the present matter with these parameters in mind, we find both lower tribunals erred, and understandably so, given the lack of clarity in this area of the law. Initially, the custody court inaccurately framed the issue as whether "the issuance of an SIJ is in the best interest of [C]hildren because it will enable them to pursue permanent lawful status and eventually citizenship." Trial Court Op. at 10. The court stated "[it] is not tasked with the

---

[22] Findings related to the non-viability of reunification may involve varying degrees of failure to meet a child's needs and parental duties. Our custody courts may be guided by statutory definitions of relevant terms under the Domestic Relations Code, specifically the definitions of "abandon[ment]," "abuse," as used in protection from abuse and child custody matters, and "child abuse," which includes "serious physical neglect," under 23 Pa.C.S. §§5402, 6102, 5322, and 6303 respectively. Non-viability of reunification may also be due to neglect or similar circumstances that are not defined by statute, and "abuse" need not necessarily be established by evidence of a crime, a report of child abuse, or involvement with U.S. or foreign child protective services. Indeed, Section 5328(a)(2) does not make the custody court's consideration of "abuse committed by a [parent]" contingent on evidence of a crime, report, or protective services. *See also* 23 Pa.C.S. §6102 ("abuse" not limited to incidents involving crimes, police report, or protective services). A minor SIJ petitioner may have experienced abuse abroad where there are distinct systems of criminal justice, protection from abuse, and child welfare. Suffice it to say "abuse" may be established through other credible evidence, such as testimony by a parent.

responsibility to opine as to an individual's desire for citizenship," and concluded the record "d[id] not definitively support a conclusion that it is in the best interest of [C]hildren to issue a SIJ order." *Id.* at 11-12. The operative question is not whether immigration to the United States is in Children's best interest, but rather whether the facts found by the court — which in this case evidently supported an award of sole legal and physical custody to Mother — also supported the SIJ predicate determinations that reunification with Father is not viable due to abuse, neglect, abandonment, or a similar basis under state law, and that a return to Guatemala is not in Children's best interest.[23]

And, in addition to asking the wrong question, the custody court held Mother to an inapt burden of proof. The court ruled "the record in this matter does not **definitively** support a conclusion that it is in the best interest of the children to issue a SIJ order," *see id.* (emphasis added), instead of considering whether Mother established by a preponderance of the evidence that it would be in Children's best interest not to return to Guatemala. *See, e.g.*, *Web Saigon US LLC v. U.S. Citizenship & Immigr. Servs.*, 541 F. Supp. 3d 1160, 1166 (D. Or. 2021) (petitioner in administrative immigration proceedings must prove by preponderance of evidence he or she is eligible for the immigration benefit sought); *In re Chawathe*, 25 I&N Dec. 369, 375 (USCIS AAO 2010) (same); 1 USCIS PM E.4(A)-(B) ("preponderance of the evidence standard of proof" applies when USCIS considers whether eligibility for an immigration benefit is established); *Guardianship of Saul H.*, 514 P.3d 871, 880 (Cal. 2022) (burden of proof is preponderance of evidence for proving necessary facts for SIJ predicate findings). *See also In re Vencil*, 152 A.3d 235, 246 (Pa. 2017) ("a preponderance of the evidence standard . . . is generally applicable to civil matters"). Compounding the problem, the Superior Court never reached the question of whether the custody court abused its discretion when making its

---

[23] The custody court also did not assess whether Father neglected Children or could not be reunified with him due to a similar basis as abuse, abandonment, or neglect. *See* Trial Ct. Op. at 10-12.

findings, as the panel erroneously believed SIJ determinations are simply not within the custody court's bailiwick.

Our "comprehensive review of the record" reveals Children are entitled to predicate SIJ determinations. *K.N.L.*, 284 A.3d at 133. We reject the custody court's SIJ findings because, as discussed *supra*, it applied the wrong legal standard and burden of proof.[24] However, there is no reason to disrupt its credibility determination and factual findings that led to its custody award as they are amply supported by the record. In awarding sole legal and physical custody to Mother, the custody court credited and relied heavily on Mother's testimony regarding the family's relationship with Father. These findings demonstrate Children's reunification with Father is not viable due to abandonment and neglect, and that it is in Children's best interest not to return to Guatemala.

Specifically, the court found Father has not provided financial or physical support for Children in years. *See* Trial Court Op. at 6-7, 9. "[E]ven when the parties resided with one another," the trial court stated, "Mother performed the majority of the parental duties," and Father provided minimal financial support despite working. *Id.* at 6-7. Significantly, the custody court also found "it does not appear that Father established a loving and nurturing relationship with [C]hildren" while they resided with him in Guatemala. *Id.* at 8-9. And, after the parties separated, Father visited the family only twice, and did not respond when Children attempted to contact him. *See id.* at 4, 8; *see also* N.T. 8/15/22 at 17 (Mother testified Father "came one or two times" to visit Children after they separated as a pretext to "insult [her]"). These findings support a determination Children's reunification with Father is not viable due to his neglect and abandonment of them.[25]

---

[24] Respectfully, the dissent too easily dismisses as "imprecise" the custody court's imposition of a clearly erroneous burden of proof. Dissenting Op. at 8.

[25] Although the dissent agrees a custody court has jurisdiction to make predicate SIJ determinations, the dissent nevertheless "doubts" "a court sitting in a custody proceeding can ever make the predicate SIJ reunification finding where the court in custody proceedings grants (continued…)

custody to one parent." Dissenting Opinion at 2. The dissent focuses on the word "reunification" in the relevant provisions and concludes it "strongly suggests that the state juvenile court proceeding must involve an immigrant child who is, at the time or as a result of the state court proceedings, separated from **both** parents and cannot be reunified with one or both due to abuse, neglect, abandonment, or a similar basis." Dissenting Opinion at 3 (emphasis in original, quotations and citation omitted). The dissent seems inclined to believe a state court is preempted from making the SIJ reunification determination for maltreated children who happen to be cared for by one parent still and not another family member or individual.

First, this issue has not been raised in the present appeal. *See also* Concurring and Dissenting Opinion at 11. Moreover, this would-be predicate state court determination the dissent raises – that the child "is separated from **both** parents" – is not explicit in the language of the statute and regulation. The dissent's reading of the word "reunification" would actually "narrow and restrict[]" our courts' jurisdiction to grant an SIJ order for one-parent custody cases, which appears contrary to federal law and "generally incongruous with Congress's efforts to expand eligibility for SIJ status and increase protections for vulnerable immigrant children." *Perez v. Cuccinelli*, 949 F.3d 865, 878 (4th Cir. 2020). And, this reading is undermined by USCIS's practices and policy manual, *see* 6 USCIS PM J.2(C)(1); *Marcelina M.-G. v. Israel S.*, 973 N.Y.S.2d 714, 724 (N.Y. App. Div. 2013) (citations omitted) ("USCIS has approved SIJS applications where reunification with one parent was viable."), and *Orozco. See Orozco*, 284 A.3d at 479; Concurring and Dissenting Opinion at 11, n. 30 ("*Orozco . . .* implicitly blessed the interpretation that custody with one parent could support SIJ findings.").

Notably, several other state courts have recognized the SIJ statute does not require proof reunification is not viable due to maltreatment with both parents. *See, e.g.*, *Amaya*, 444 P.3d at 453 ("We conclude the plain language of 'one or both of [the juvenile's] parents' is clear — the use of a disjunctive 'or' signals the reunification prong is met where the juvenile cannot reunify with one parent or with both parents. In approving of one-parent SIJ cases, we join the majority of states that have considered this issue.") (alteration in original); *J.U. v. J.C.P.C.*, 176 A.3d 136, 138–39 (D.C. 2018) ("A finding is sufficient for SIJ status if reunification with only one parent is not viable due to abuse, neglect, or abandonment[.]"); *In re Guardianship of Sebastian*, 238 N.E.3d 721, 727 (Ind. Ct. App. 2024) ("[Child] claims that reunification with Father, not Mother, is not viable due to abandonment. This is all that is needed [for the SIJ reunification finding]."); *In re Israel O.*, 182 Cal. Rptr. 3d 548, 556 (Cal. Ct. App. 2015) ("We therefore conclude that an eligible minor under section 1101(a)(27)(J) includes a juvenile for whom a safe and suitable parental home is available in the United States and reunification with a parent in his or her country of origin is not viable due to abuse, neglect or abandonment."); *In re Est. of Nina L.*, 41 N.E.3d 930, 938 (Ill. App. Ct. 2015) ("If Congress meant that an applicant for SIJ[S] was required to show that reunification with both parents was not viable due to abuse, neglect or abandonment, it could easily have so provided. Use of the disjunctive indicates that abuse, neglect or abandonment by one parent is sufficient to support the predicate finding.") (emphasis omitted); *Marcelina M.-G.*, 973 N.Y.S.2d at 722 ("We interpret the '1 or both' language to provide SIJS eligibility where reunification with just one parent is not viable as a result of abuse, neglect, abandonment, or a similar State law basis.") (citations (continued…)

Likewise, the custody court's best interest analysis and award of sole custody to Mother establish it is in Children's best interest not to be returned to Guatemala. Mother is present in the U.S. with Children, adequately provides for their needs, and has "established a loving, stable, consistent, and nurturing relationship with [them]." *See* Trial Court Op. at 7-9. Children have lived in the U.S. since 2018. *See id.* at 7; *see also* N.T. 8/15/22 at 21 (Mother testified she believes Children are happy living in Pennsylvania with her, and they told her they do not want to return to Guatemala). The court found they have extended family here and are doing well in school. *See* Trial Court Op. at 7*; see also* N.T. 8/15/22 at 21 (Mother testified Children would not have the same education opportunities in Guatemala). The court noted Children do not appear to have a relationship with their Father or half-siblings. *See* Trial Court Op. at 7-9; *see also* N.T. 8/15/22 at 24 (Mother testified Children do not have a relationship with their Father's side of the family). Moreover, the court found Father exhibited violent behavior in front of Children and towards their Mother, and his family appeared to condone it. *See* Trial Court Op. at 5-6.

We also conclude the custody court's findings show Children's reunification is not viable for safety reasons. The record reflects Father's physical abuse of Mother included strangling, hitting, grabbing and throwing her; and that some of this occurred in front of Children, causing them to scream and cry for Father not to harm or kill Mother. *See id.* at 3-6, 9. Mother testified his pattern of abuse did not cease even when Mother sought a restraining order and when she

---

omitted); *Matter of D.A.M.*, 2012 WL 6097225, *3 (Minn. Ct. App. 2012) (unpublished) ("A possibility of reunification with one parent does not bar SIJS eligibility.").

And, the Supreme Courts of New Jersey and Massachusetts see no need to interpret the "1 or both" language in order to clarify the role of their state courts in the SIJ program. *See Guardianship of Penate*, 76 N.E.3d 960, 967 (Mass. 2017) ("The State court's duty to make special findings is not dependent on the resolution of the ambiguous ["1 or both"] language, and thus we decline to endeavor to [interpret it]."); *see also H.S.P.*, 121 A.3d at 859–60 ("[W]e decline . . . to interpret the "1 or both" language of the statute. Such a task is exclusively the province of the federal government, which has provided copious guidance as to the application process and eligibility.").

later left Father. *See id.* at 3, 6. Given these circumstances, we conclude reunification with Father is not viable, notwithstanding that the record did not establish he abused Children themselves. *See* 23 Pa.C.S. §5328(a) (in determining best interest of the child custody court to consider factors affecting child's safety).[26]

Accordingly, given the time-sensitive nature of this children's custody-related litigation, we remand to the custody court and direct that it enter orders for Children containing predicate SIJ determinations and corresponding factual support consistent with today's holdings.

### III. Mandate

The order of the Superior Court is reversed and the matter is remanded to the custody court for entry of orders pursuant to 8 U.S.C. §1101(a)(27)(J) and 8 C.F.R. §204.11. Specifically, the orders shall each include the determinations that (1) the custody court exercised its jurisdiction as authorized by the UCCJEA to determine the Child's custody and care; (2) the Child's reunification with Father is not viable under Pennsylvania law due to Father's abandonment and neglect, and a similar basis; and (3) it is not in the Child's best interest to be returned to Guatemala. These orders shall include the factual basis for such determinations. The court's order awarding sole legal and physical custody of Children to Mother remains intact.

Chief Justice Todd and Justices Donohue and McCaffery join the opinion.

Justice Wecht files a concurring and dissenting opinion.

Justice Brobson files a dissenting opinion in which Justice Mundy joins.

---

[26] Children presumably suffered emotional turmoil when witnessing Father's physical abuse of Mother, but the record does not contain evidence of any "serious mental injury" that may have resulted from his actions, *see* 23 Pa.C.S. §6303, or that Father "attempt[ed] to cause [Children] . . . bodily injury" or "[placed] [them] in reasonable fear of imminent serious bodily injury." 23 Pa.C.S. §6102.